Emmett PROUDFOOT,
Plaintiff-Appellant,

v.

SEAFARER'S INTERNATIONAL UNION, et al., Defendants-Appellees.

No. 84–7727
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 12, 1985.

---

W.A. Kimbrough, Jr., Mobile, Ala., for plaintiff-appellant.

J. Randall Crane, Mobile, Ala., for Seafarer's.

Willis C. Darby, Jr., Mobile, Ala., for Crowley Towing & Trans. Co.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

GODBOLD, Chief Judge:

Plaintiff Proudfoot sued under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging that defendant Seafarer's International Union ("SIU") breached its duty of fair representation and that defendant Crowley Towing and Transportation Company unlawfully discharged him. The district court ruled that the action was filed after the six month period allowed by 29 U.S.C. § 160(b) and granted the motions of both defendants for summary judgment. We affirm in part and reverse in part.

I. Background

Plaintiff Proudfoot was fired by Crowley on January 17, 1983 for the stated reason of failing to lubricate the gear on the tug on which he was first mate and failing to carry out instructions to lubricate the gear on the barge the tug was towing.

On January 20 Proudfoot sought the aid of his bargaining representative, Seafarer's International Union, by writing union representative Joe Perez in Houston, Texas and setting out his contentions that his discharge was wrongful.

On April 8 Proudfoot wrote Joey Sacco, vice president in charge of Gulf operations of the union, in Houston, Texas, stating that he was "not satisfied with the outcome thus far." The letter stated: "Joe [Perez] told me he had talked to Sqyres [the Crowley official who had notified Proudfoot he was fired] and there was nothing he (Joe) could do. I hope you will take a look at this matter soon." A copy of this letter was sent to Angus Campbell, vice president of the union.

The union responded on April 29 with a letter from union representative Frank Paladino. The letter apologized for the delay, stating that the union had been awaiting information from the company. Paladino said that the company's charges against plaintiff had been reviewed and that the company was justified in the action it took. It concluded "if I can be of any further assistance, please don't hesitate to contact this office."

On May 6, 1983 Proudfoot, according to his affidavit, drove to New Orleans to see Sacco and Pat Pillsworth. The affidavit states that Pillsworth said that he would get in touch with Crowley to further look into Proudfoot's matter and that the conversation closed with Sacco assuring Proudfoot that Pillsworth would indeed look into the matter.

The affidavit further states that on October 17, 1983 Proudfoot drove to New Orleans again to see Sacco and Pillsworth but was unable to see them. Then, on the same day, he wrote Campbell, referring to his previous correspondence and stating that the matter had not been satisfactorily

cleared up. Proudfoot described his trip to New Orleans as being for the purpose of initiating a grievance procedure against Crowley. The letter ended: "I feel that I have been quite tolerant up to this point, but the time has come to either initiate grievance procedures or to give me something in writing that there will be no grievance procedure so that I can begin legal proceedings. I hope this letter makes clear my stand on this issue."

Campbell responded with a letter dated October 25. It restated Proudfoot's recital of his correspondence and his contention that the matter had not been satisfactorily cleared up. It then says: "We have contacted Joe Sacco in Houston, and he will be returning to New Orleans the week starting October 31st. Please contact Joe at the New Orleans hall to set up a meeting relative to hearing your complaint." A copy of this letter went to Sacco.

On November 15, 1983 plaintiff wired Sacco in New Orleans asking that by November 16 he be advised of the status of his request for arbitration of his grievance against Crowley because he had a job available beginning November 17 that would take him out of the country for two months. The summary judgment record does not disclose what the response was if any. However, on January 6, 1984 an attorney for plaintiff, coming into the picture for the first time, wrote Tommy Glidewell, a representative of the union in Mobile, as follows: "This letter will confirm my telephone conversation with you of January 4, 1984, wherein you informed me that the dispute concerning [Proudfoot] and his employer, Crowley Towing of Lake Charles, Louisiana, has been resolved." The letter goes on to say that Proudfoot had been unable to reach Glidewell, and had been in touch with Crowley to find out the terms under which he was to be reemployed and when he was to report to work, but that

Crowley had told Proudfoot that he must receive the information on "the terms of the settlement and date he is to return to work for Crowley" from the union. As it turned out the settlement worked out between the union and Crowley was for Proudfoot to be reinstated to his job without back pay. Proudfoot declined to accept this proposed settlement.

## II. The summary judgment for SIU

■ In *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court decided that the six month statute of limitations prescribed by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b),[1] applied to hybrid suits such as this one alleging that the employer has breached the collective bargaining agreement and that the union has breached its duty of fair representation. Section 10(b)'s six-month limitations period starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation. *Howard v. Lockheed-Georgia Co.,* 742 F.2d 612, 614 (11th Cir.1984). With respect to an alleged breach of a union's duty of fair representation, *Howard* determined that the period began when the plaintiff learned of the union's unfavorable "final actions," i.e., when the grievance was "denied" because the union's Senior Board decided that "plaintiff's grievance was without merit and would not be presented before the company representatives on the Senior Board." *Id.* at 614.

■ The district court held that there was no question of material fact that the six month period had expired. It based its ruling on Proudfoot's April 8 letter acknowledging that Perez had told Proudfoot that Perez could not do anything and Paladino's April 29 letter stating that Crowley was "justified in the action they took in your situation."

---

**1.** This statute provides in relevant part that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board...."

Although the Perez and Paladino communications both informed Proudfoot of adverse union action, it is perhaps arguable whether, standing alone, they would have required a jury to find that Proudfoot should have known that the union had taken *final* action. We need not decide this because additional matter before the district court on the summary judgment motion created a material issue of fact with respect to this question. In particular, on May 6, only one week after Proudfoot received the Paladino letter, Joey Sacco and Pat Pillsworth both told Proudfoot that Pillsworth would look into the matter of Proudfoot's dismissal. In addition, Campbell's October 25 letter instructed Proudfoot to contact Sacco to set up a meeting with him relative to Proudfoot's complaint. Finally, in January 1984 Proudfoot's attorney learned from a union representative that Proudfoot's matter had been resolved. Proudfoot subsequently received an offer of reinstatement.[2]

Accordingly, we hold that it was error to enter summary judgment in favor of the union.

### III. The summary judgment for Crowley

Proudfoot's cause of action against Crowley accrued when Crowley dismissed Proudfoot on January 17, 1983. The dismissal was the "act[ ] constituting the alleged violation." *Howard*, 742 F.2d at 614.[3] Since this complaint was not filed until April 16, 1984, the district court properly found that the action against Crowley is barred.

AFFIRMED in part and REVERSED in part.

**2.** These alleged facts distinquish *Chambers v. Steel Workers*, 589 F.Supp. 39 (S.D.Ohio 1984) and *Giglio v. White Castles Systems, Inc.*, 116 L.R.R.M. 2146 (D.N.J.1984), cases relied upon by the district court, holding that unilateral communications by the plaintiff do not toll the statute of limitations.

**3.** Proudfoot argues that the claims against Crowley and the union are inextricably interdependent since to prevail against the union he must show that the employer violated the collective bargaining agreement. However, it does not follow that the cause of action against Crowley fails to accrue until the cause of action against the union accrues. Nor does the fact that Proudfoot's action against Crowley is barred by the statute of limitations establish that Crowley did not violate the collective bargaining agreement. *Cf. Foster v. United Steelworkers of America*, 752 F.2d 1533 (11th Cir. 1985).