Alternative to #2 picture.

Laura J. CONLEY, Plaintiff,

v.

GREAT LAKES PLASTICS, INC., Bradley Killop, Evans Industries, d/b/a Great Lakes Plastics, Inc., and Service Employees International Union, Local 79, Jointly and Severally, Defendants.

Civ. A. No. 85CV–60279–AA.

United States District Court,
E.D. Michigan, S.D.

Dec. 17, 1985.

Gary A. Colbert, Southfield, Mich., for plaintiff.

Lee R. Franklin, Haggerty & Franklin, and Dennis M. Rauss, Donovan Hammond Ziegelman Roach & Sotiroff, P.C., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is a hybrid § 301/duty of fair representation case. The primary issue presented for decision at this time concerns the six month statute of limitations that governs these actions. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Specifically, this court must decide when the six month period applicable to plaintiff's claim against her employer begins to run. The employer argues that the period runs from the date that its alleged breach of § 301 occurred. Plaintiff maintains that the period runs from the date she knew or should have known of the union's breach of the duty of fair representation.

BACKGROUND

Plaintiff Laura Conley was employed as a press operator by defendant Great Lakes Plastics, Inc., a division of defendant Evans Industries, from May 6, 1974 to October 17, 1984. In addition to Great Lakes Plastics and Evans Industries, the named defendants are Bradley Killop, a plant manager at Great Lakes, and Service Employees International Union, Local 79 ("the Union"), which represented Conley.

The complaint reveals that plaintiff began a medical leave of absence from Great Lakes Plastics on July 24, 1984. She was hospitalized to receive treatment for stress and depression. Plaintiff claims that her problems were caused at least in part by harassment she received from Killop. On October 1, 1984, plaintiff returned to work. She alleges that Killop and perhaps other people at work continued to harass her. This mistreatment caused plaintiff to suffer a relapse on October 17, 1984, and she began to cry at work. Plaintiff informed her supervisor that she was going home,

and she did. Later that day, plaintiff received a mailgram from Great Lakes informing her that it regarded her absence as a voluntary quit. Plaintiff sent the Company a return mailgram that same day, informing it that she had not quit her job.

The next day, October 18, 1984, plaintiff filed a grievance. She alleged that Great Lakes had terminated her arbitrarily and without just cause, in violation of the collective bargaining agreement. This activated the grievance procedure set forth in Article IV, § 3 of the collective bargaining agreement between Great Lakes and the Union. The procedure requires a meeting between representatives of the Union Shop Committee and the Company to discuss the grievance. The meeting is to be held within two days of the filing of the grievance, but the parties may extend this time limit by mutual agreement. Within seven days of the meeting, the Company must submit a written response to the grievance to the Shop Committee. The Committee may then request a second meeting, and the Company must submit another written response within seven days of that meeting. The next step is arbitration, which must be requested by the party desiring arbitration within seven days of the submission of the Company's written response. This time limit may be extended by mutual agreement.

On November 29, 1984, Bradley Killop of Great Lakes wrote to a Union representative, stating that the Company "will be happy to meet" regarding Conley's grievance. The letter said that the Union's business agent had scheduled a meeting without consulting or informing the Shop Committee, and that the Company therefore would not attend. Killop then suggested that the meeting be held in Salem, Michigan, sometime during the workweek. It appears that the Union neither responded to Killop's letter nor scheduled a meeting to discuss Conley's grievance.

Plaintiff retained an attorney named George Wirth, who repeatedly contacted Union representatives during late 1984 and early 1985. Mr. Wirth's affidavit details these attempts to ascertain the status of Conley's grievance. On February 27, 1985, Union business agent Jim Watters informed Wirth that another Union representative was working on Conley's case and would have an arbitration date by the end of the week. No arbitration date was ever scheduled, however, and Union representatives stopped returning Wirth's calls.

On April 11, 1985, Conley filed an unfair labor practice charge against the Union with the NLRB. The Regional Director of the NLRB refused to issue a complaint on Conley's behalf, and his decision was affirmed by the General Counsel of the NLRB on July 25, 1985. Conley filed the present case on July 8, 1985.

Count I of Conley's complaint charges that Great Lakes, Evans, and Killop violated § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff claims that these defendants breached the collective bargaining agreement by discharging her without just cause. Count I also claims that defendants' conduct violates the Fourteenth Amendment to the United States Constitution. Count II alleges that the defendant union breached its duty of fair representation. Plaintiff claims that the union acted arbitrarily and in bad faith when it refused to process her grievance.

■ All of the defendants now move for summary judgment.[1] For the reasons discussed below, the court grants defendants' motions as to the Fourteenth Amendment claim, but otherwise denies the motions.

### I. *Statute of Limitations on Claim Against Employer*

The parties in this case agree that it is a hybrid § 301/fair representation case. In such actions, plaintiff combines two interdependent claims. To prevail against ei-

---

1. Defendants Great Lakes, Evans, and Killop label their motion as one for dismissal, rather than for summary judgment. However, as both sides have presented materials outside of the pleadings, the court will treat this motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

ther the company or the Union, plaintiff must show both that her discharge violates the contract and that the Union breached its duty. *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290; *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Plaintiff "may, if [s]he chooses, sue one defendant and not the other; but the case [s]he must prove is the same whether [s]he sues one, the other, or both." *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291.

In *DelCostello*, the Supreme Court applied a six month period of limitations to hybrid actions. The question presented by this case is when the six month period begins to run. Numerous courts of appeals have found that "[f]or purposes of a hybrid § 301/fair representation action, the time the statute of limitations begins to run is when the claimant knows or should have known of the union's alleged breach of its duty of fair representation." *See, e.g., Dowty v. Pioneer Rural Elec. Coop.* 770 F.2d 52, 56 (6th Cir.1985); *Howard v. Lockheed-Georgia Co.*, 742 F.2d 612, 614 (11th Cir.1984); *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Great Lakes, Evans and Killop, the employer defendants, argue that the above statement applies only to plaintiff's fair representation claim against the Union. They contend that plaintiff's § 301 claim against them accrued on October 17, 1984, the date of her discharge or quit. The employer defendants argue that their alleged wrongdoing began and ended on the day that plaintiff's employment was terminated. Therefore, the six month statute applicable to plaintiff's claim against the employer defendants began to run on October 17, 1984.[2]

■ The court disagrees. The six month period of limitations does not begin to run until both of plaintiff's "inextricably interdependent" claims exist. *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290. As previously indicated, plaintiff must prove the Union's breach of its duty of fair representation to prevail on her § 301 claim against the company. That breach is one element of the claim against the employer. Plaintiff cannot bring a hybrid action until the Union has breached its duty. Therefore, the limitations period begins when the hybrid cause of action, consisting of both the § 301 and fair representation claims, accrues. This occurs when "the claimant knows or should have known of the union's alleged breach of its duty of fair representation." *Dowty*, 770 F.2d at 56; *Howard*, 742 F.2d at 614; *Metz*, 715 F.2d at 304.

The necessity of holding that plaintiff's § 301 claim and fair representation claim accrue simultaneously is revealed by examining the consequences of the opposite result. Holding that the § 301 limitations period begins to run before the fair representation period would completely eliminate many hybrid actions against employers. Any time more than six months elapsed between a plaintiff's discharge date and the date she should have known of the union's breach, the plaintiff would be barred from suing her employer and could use only the union. The employer thus would be able to escape liability by "hid[ing] behind the union's wrongful failure to act." *Vaca v. Sipes*, 386 U.S. 171, 197, 87 S.Ct. 903, 920, 17 L.Ed.2d 842 (1967). This would contravene the intent of Congress by "shield[ing] employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements." *Vaca*, 386 U.S. at 186, 87 S.Ct. at 914. Moreover, holding that the limitations period on the § 301 claim begins to run on the date of discharge would encourage employers to bargain for and obtain contractual grievance procedures extending beyond six months. Such procedures would ensure that the cause of action against the employer would always expire before the claim against the

---

**2.** The employer defendants' position is supported by a recent decision from the Court of Appeals for the Eleventh Circuit, *Proudfoot v.* *Seafarer's Int'l Union*, 767 F.2d 1538, 1541 n. 3 (11th Cir.1985). For the reasons discussed *infra*, this court declines to follow *Proudfoot*.

union accrued, thus eliminating employers from hybrid lawsuits.

■ In addition to allowing employers to escape liability for their wrongful conduct, accruing the § 301 claim before the fair representation claim would often leave injured employees without a complete remedy. If the employee cannot sue her employer, but can only sue the union, then a court cannot impose equitable remedies such as an order to arbitrate. *DelCostello*, 462 U.S. at 168 n. 17, 103 S.Ct. at 2292 n. 17; *Vaca*, 386 U.S. at 196, 87 S.Ct. at 920. The Supreme Court has indicated that "an order compelling arbitration should be viewed as one of the available remedies" for hybrid § 301/fair representation plaintiffs. *Vaca*, 386 U.S. at 196, 87 S.Ct. at 920.

■ There is an even more important reason that a hybrid § 301/fair representation plaintiff should not be limited to a suit against her union. Plaintiff may not recover from the union her damages caused by the employer's breach of § 301. Instead, the union may be held liable *only* for the increase, if any, in plaintiff's damages caused by the union's refusal to process the grievance. *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292; *Bowen v. United States Postal Serv.*, 459 U.S. 212, 222–24, 103 S.Ct. 588, 594–96, 74 L.Ed.2d 402 (1983); *Vaca*, 386 U.S. at 197–98, 87 S.Ct. at 920–21. Thus, "a large part of the damages will remain uncollectible in almost every case unless the employee sues within the time allotted for his suit against the employer." *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292 (footnote omitted).

"Of paramount importance is the right of the employee, who has been injured by both the employer's and the union's breach, to be made whole." *Bowen*, 459 U.S. at 222, 103 S.Ct. at 595. Early accrual of the § 301 claim would restrict many such employees to a suit against the union only. This would unacceptably limit both the available damages and the available remedies.

The employer defendants argue that the result this court reaches conflicts with *DelCostello*. Specifically, they claim that the Supreme Court adopted the short *DelCostello* limitations period to protect employers from stale § 301 claims. Therefore, the employer defendants conclude, the cause of action against them must accrue on the date of discharge. However, defendants misconstrue the purpose of the six month limitations period, which is not primarily intended to shield employers. Instead, *DelCostello* adopted a brief limitations period to protect the finality and integrity of the internally-selected dispute resolution process. *DelCostello*, 462 U.S. at 163–71, 103 S.Ct. at 2289–94. In cases such as this, where the internal grievance procedure has broken down, judicial review of plaintiff's claims against both the employer and the union is essential.

Not only is the holding of this court consistent with Supreme Court precedent, but it comports with prior decisions of the Court of Appeals for the Sixth Circuit as well. That court has routinely concluded that hybrid § 301/fair representation claims against both employers and unions accrue when a plaintiff exhausted his intra-union remedies, or when such exhaustion proved futile. The Sixth Circuit thus accrues the claims against the employer and the union defendants simultaneously. *See, e.g., Miller v. Jeep Corp.*, 774 F.2d 111, 114 (6th Cir.1985); *Dowty*, 770 F.2d at 56–57; *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir.1985).

For the reasons just discussed, this court holds that plaintiff's claims against all of the named defendants accrued when she knew or should have known of the Union's breach of its duty of fair representation.

II. *Accrual Date of Claims Against All Defendants*

■ The next issue that must be resolved is the question of when Conley knew or should have known of the Union's breach. The employer defendants argue that Conley should have known that the Union was not going to process her griev-

ance by December, 1984. They reason that the collective bargaining agreement "contains a five-step grievance procedure which culminates in binding arbitration *within a few weeks*." Thus, the Union should have demanded arbitration of Conley's grievance "by no later than mid-December." The Union's failure to do so should have alerted Conley to the fact that it was not going to process her grievance.

An examination of the grievance procedure of Article IV, § 3 of the collective bargaining agreement refutes defendants' argument. The procedure calls for a series of meetings that culminate in arbitration, but the timetable provided for these steps is flexible and can be modified by the employer and Union. Therefore, the grievance procedure does not establish fixed deadlines by which plaintiff could have monitored the progress reports that she and her attorney, George Wirth, received from Union representatives.

The affidavit of George Wirth establishes that the Union informed him on February 27, 1985 that it would obtain an arbitration date for Conley's grievance by the end of the week. At this point, plaintiff had no reason to know that the Union would ultimately refuse to pursue the matter. Plaintiff filed her complaint in this case on July 8, 1985, less than six months after February 27, 1985. Her hybrid § 301/fair representation claim is therefore timely under *DelCostello*. Defendants' motion for summary judgment based on the *DelCostello* statute of limitations must be denied.

III. *Fourteenth Amendment*

■ Plaintiff's complaint alleges that the employer defendants' breach of contract somehow violates the Fourteenth Amendment to the United States Constitution. Plaintiff fails to allege that defendants' conduct constitutes state action, and it certainly appears that all of the alleged wrongs are completely private in nature. It has been firmly established, at least since the *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), that the Fourteenth Amendment reaches only state ac-

tion. Therefore, plaintiff's Fourteenth Amendment claim must be dismissed.

CONCLUSION

Defendants' motions are granted as to plaintiff's Fourteenth Amendment claim, but are otherwise denied.

SO ORDERED.