**Donald W. HAYES, Plaintiff,**

v.

**REYNOLDS METALS COMPANY, et al., Defendants.**

Civ. A. No. 82–AR–5543–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

May 7, 1984.

Stanley E. Munsey, Rosser & Munsey, Tuscumbia, Ala., for plaintiff.

Clarence F. Rhea, Donald Rhea, Rhea, Boyd & Rhea, Gadsden, Ala., for Local 320.

Vincent McAlister, Almon, McAlister, Ashe, Baccus & Smith, Tuscumbia, Ala., for Reynolds.

## MEMORANDUM OPINION

ACKER, District Judge.

After counsel for all parties had made their opening statements to the jury, during which the plaintiff, Donald W. Hayes (plaintiff), made no reference whatsoever to his claim that defendant, International Union of Operating Engineers, Local Union 320 (Union), wrongfully or arbitrarily failed to carry plaintiff's grievance the final step to arbitration, it became quite apparent to the Court that plaintiff's case is based primarily, if not exclusively, on alleged wrongdoing by the Union and the defendant, Reynolds Metals Company (Company), which occurred more than six months prior

to the filing of suit. Although the Union's failure to insist on arbitration technically remained as a claim embraced within the pleadings and the pre-trial order, the question of whether or not the Union's decision was itself wrongful now becomes academic in light of the Court's interpretation of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), an interpretation which the Court shared with counsel in chambers after opening statements.

Plaintiff's counsel thereupon pointed out the futility of proceeding with trial under the circumstances, after which defendants requested the Court to reconsider their motions for summary judgment, not only based on the materials available when their motions were initially denied, but in view of the statements of plaintiff's counsel and the additional facts which were contemporaneously stipulated of record in chambers. The undisputed pertinent and controlling facts now appearing of record, are:

(1) The merger of the seniority rosters by agreement between the Union and the Company, having the effect of lowering plaintiff's relative seniority in his particular job, took place more than six months prior to the filing of suit.

(2) Plaintiff's lay-off or termination as a result of his lowered seniority took place more than six months prior to the filing of suit.

(3) Section 7 of the grievance machinery contained in the Collective Bargaining Agreement provides:

Section 7 Failing satisfactory adjustment, the grievance *shall* be submitted to arbitration. Should the Union and the Company fail to agree on the Arbitrator promptly, the Arbitrator shall be appointed by the Director of the Federal Mediation and Conciliation Service by joint request. The decision of the Arbitrator shall be final and binding upon all parties concerned. The expense and fee of the Arbitrator shall be shared equally by the Company and the Union. (emphasis supplied).

(4) Historically the Union has many, many times decided not to arbitrate a particular grievance despite the Section 7 language "shall", which also appears in Section 4, Section 5 and Section 6 of the grievance machinery. These earlier steps in the grievance procedure provide:

Section 4 Failing satisfactory adjustment within five (5) days, the grievance *shall* be presented by the Union to the Personnel Manager.

Section 5 Failing satisfactory adjustment within ten (10) days, the grievance *shall* be presented by the Union to the Assistant and/or Plant Manager.

Section 6 Failing satisfactory adjustment within ten (10) days, the grievance *shall* be presented by the Union to the Director of Industrial Relations, who *shall* give his answer within fifteen (15) days, or reach agreement to mutually extend the time limit to meet to discuss the grievance. (emphasis supplied).

In other words, if this word "shall" is construed in all cases to be mandatory, there is never any retreat from the expensive and time consuming process once the grievance reaches stage three. Such an interpretation would not make sense in light of custom, practice and practical effect.

(5) Whether arbitrary or not, the Union decided not to prosecute the grievance to arbitration and timely communicated its said decision both to plaintiff and to the Company.

(6) This decision not to arbitrate was made less than six months prior to the filing of suit.

■ Upon reconsidering defendants' motions for summary judgment in light of the supplementary materials, the Court now concludes that the said motions are due to be granted. Plaintiff has made clear that his entitlement to relief depends upon what he calls a "tolling" of the six months statute of limitations by virtue of the grievance in process, and he insists that the statute did not begin to run until his grievance had run its course. This Court does not read *DelCostello* to permit either a tolling or a non-accrual of the cause under these cir-

cumstances. The Court reads *DelCostello* to require a plaintiff to file his suit within six months from the date upon which his "cause of action accrued". 103 S.Ct. 2294. The accrual here took place when the merger of the seniority rosters became effective and certainly no later than plaintiff's termination. *Benson v. General Motors Corp.*, 716 F.2d 862 (11th Cir.1983). It is true, of course, that the Supreme Court ordered a remand in *DelCostello* for a consideration of the allegation "that certain events operated to toll the running of the statute of limitations". 103 S.Ct. 2294. The Supreme Court did not shed great light on what the possible events were in *DelCostello*, or whether or not said events might effect a tolling. This Court has checked with the district court to which *DelCostello* was remanded and has ascertained that as yet there is no decision on the "tolling" question. Therefore, it is necessary to examine the over-all rationale of *DelCostello*, and to see where that rationale leads under the instant circumstances. The Supreme Court majority borrowed the six months limitation of § 10(b) from the National Labor Relations Act instead of the most nearly analogous state statute of limitations. Thus, the National Labor Relations Act is the best place to look for what constitutes a tolling of § 10(b). The question was considered in *Ass'n of Frigidaire Model Makers v. General Motors*, 573 F.Supp. 236 (S.D.Ohio 1983), decided after *DelCostello*. There the district court said at 573 F.Supp. 239:

> ... the fact that at least one of the Plaintiffs filed a complaint with the NLRB in December of 1980 does not toll the action. In *DelCostello* the Supreme Court merely remanded for a determination of that issue, among others; it was not purporting to decide the issue. 103 S.Ct. at 2294–95. As Defendants argue, any tolling under federal law must be compatible with the congressional purpose behind the federal statute governing liability. *See, Chardon v. Fumero Soto,* —— U.S. ——, 103 S.Ct. 2611, 2616–17, 77 L.Ed.2d 74 (1983); *Pesola v. Inland Tool & Mfg., Inc.,* 423 F.Supp. 30,

34 (E.D.Mich.1976). It is well settled that a § 301 action is independent of any NLRB proceeding. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hudson v. Teamsters Local Union No. 957,* 536 F.Supp. 1138, 1143 (S.D. Ohio 1982). Indeed, for this very reason, the Court excluded from evidence in the trial in this case, on grounds of relevancy, the ultimate dismissal of said complaint by the NLRB on February 11, 1981. It follows, as at least one court has intimated in dicta, *McNutt, supra,* that the filing of a NLRB complaint does not toll the running of a statute of limitations on a § 301 action. Nor have Plaintiffs cited any authority to the contrary.

It appears that a recent decision from the Ninth Circuit *has* reached a contrary result. In *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030 (9th Cir.1983), the plaintiff union sued the employer in a "straight-forward" § 301 action, rather than a "hybrid" § 301 duty of fair representation suit, such as the within matter. Finding that the applicable statute of limitation would be derived from state law, *id.* at 1033, the court also applied state law to determine if tolling was appropriate. *Id.* Based on California's law of equitable tolling, the Court concluded that an attempt by the union to resolve the case before the NLRB should toll the running of the limitations statute during the period of the NLRB proceedings. *Id.* at 1037.

For the reasons of statutory construction set out above, this Court does not find the Ninth Circuit's ultimate result compelling. In addition, it should be pointed out that, after *DelCostello*, a "straight-forward" § 301 suit would still be governed by a *state* statute of limitations, *see,* 103 S.Ct. at 2287 n. 12, 2294, and *state* tolling rules would presumably apply, as well. *See, Chardon v. Fumero Soto, supra.* However, "hybrid" § 301 cases are now governed by a *federal* limitations period, presumably meaning that *federal* tolling rules (to be developed

by courts), rather than their *state* counterparts, apply. *Cf. Zipes v. Trans-World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (Title VII tolling rules); *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (FELA tolling rules). Thus, the Court in this action is not compelled to look toward Ohio law for the rules of tolling.

In any event, even accepting the Ninth Circuit's position does not change the result of this case. The *Retail Clerks* court emphasized that the § 301 limitations period was only tolled during the pendency of the NLRB proceeding; it did not initially start to run again after said proceeding was terminated. 707 F.2d at 1033. Here, the NLRB proceeding began in December of 1980 and culminated approximately three months later. Assuming, as this Court does, that Plaintiffs' action accrued, at the latest, in July, 1980, the tolling of the six month limitation period during the NLRB proceeding *still* makes the June 24, 1981, filing date untimely.

This Court agrees with the reasoning of the district court in Ohio. In the instant situation plaintiff is forced by *Frigidaire Model Makers* to claim that the refusal to arbitrate is the *date of accrual* of his cause of action. Where this contention leads will be explored *infra.*

This Court concedes, as it must, that plaintiff might be in a Catch 22 if he is required to exhaust his grievance procedures before filing suit, that is, if that exhaustion takes more than six months. Although it may seem harsh, there is logic in requiring a § 301 hybrid plaintiff to file suit within six months even though the exhaustion of his collective bargaining remedies has not been completed. A prospective plaintiff is required by *DelCostello* to keep one eye on his grievance and one eye on the six months statute of limitations.

The Eleventh Circuit has also shed some light on the situation after *DelCostello.* In *Benson v. General Motors Corp., supra,* a seniority case very similar to this one, the

Eleventh Circuit announced the following rule as to when the statute begins to run:

> [L]ook to when plaintiffs either were or should have been aware of the injury itself, not to when plaintiffs became aware of one of the injury's many manifestations.

716 F.2d 864.

*Benson* forecloses plaintiff totally. If plaintiff was in fact affected adversely by the merger of the seniority rosters, as *Benson* says he was, he immediately became aware of his injury, and his awareness of the later refusal to arbitrate was simply "one of the injury's many manifestations". A subsequent manifestation does not effect a tolling.

▉ If plaintiff still has a distinct cause of action which was created by his Union's failure to take his grievance to arbitration, this cause of action is more theoretical than actual. It is a claim which must be disposed of on summary judgment for the following separate and several reasons:

1. It states no claim under § 301 against the Company, and therefore is not a hybrid claim.

2. It necessarily depends upon proof, not even colorably demonstrated by any counter-affidavit or deposition, that the Union's failure to arbitrate was malicious or invidious or intentionally and personally directed at him. These are the requirements of a § 301 claim. *Graf v. Elgin, Joliett and Eastern Ry. Co.,* 697 F.2d 771 (7th Cir.1983).

3. It necessarily depends upon proof, not here shown and, as a practical matter, impossible to obtain, that if the grievance had been arbitrated, plaintiff would have succeeded in reversing the decision to merge the seniority rosters. In other words, there is no way plaintiff can prove that his alleged injury was proximately caused by the failure to arbitrate.

In *Foster v. United Steel Workers Local 13600, et. al.,* CV 81–AR–1248–S (N.D.Ala. 1983), a case in which Foster claimed against his union and his company for a

512

failure to proceed to arbitration of his grievance, this Court ordered the parties actually to proceed to arbitration. *Foster*, which is presently on appeal to the Eleventh Circuit, is readily distinguished from the instant case, not only because the language is different in the respective collective bargaining agreements, but because in *Foster* there was no evidence of an historic practice which varied and gave special meaning to specific language in the agreement, and in *Foster* the required notice to the company of a discontinuance of the grievance and of the union's decision not to arbitrate had not been given. Thus, the option which the Court deemed available in *Foster* for ordering the case to arbitration is not available to the Court in this case under its undisputed facts.

Because plaintiff concedes that he is at a dead end unless the statute of limitations was interrupted by the pendency of his grievance to avoid *DelCostello*, and that without such a "tolling" a trial would be futile, and because the material facts are not in dispute, the Court will, by separate order, grant the defendants' motions for summary judgment.