786 F.2d 1071
 122 L.R.R.M. (BNA) 2779, 55 USLW 2052,
104 Lab.Cas. P 11,928
 Ralph HILL, Plaintiff-Appellant,
v.
GEORGIA POWER COMPANY; United Brotherhood of Carpenters and
Joiners of America, Local No. 144 AFL-CIO; and
Superior Electric Company, Defendant-Appellees.
Walter WADLEY, Plaintiff-Appellant,
v.
GEORGIA POWER COMPANY; Construction Production &
Maintenance Workers, Local No. 1210, AFL-CIO; and
Superior Electric Company, Defendant-Appellees.
 No. 85-8597.
 United States Court of Appeals,
Eleventh Circuit.
 April 14, 1986.
 
 Burton Lee, Elizabeth R. Francisco, Fulton Federal Bldg., Macon, Ga., for plaintiff-appellant.
 Jesse P. Schaudies, Jr., Michael C. Murphy, Atlanta, Ga., Joe R. Whatley, Jr., Birmingham, Ala., for Local 144 and 1210.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before JOHNSON and HATCHETT, Circuit Judges, and ALAIMO*, Chief Judge.
 ALAIMO, Chief Judge:
 
 
 1
 Plaintiffs Hill and Wadley brought suit under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1982), alleging that Superior Electric Company ("Superior") wrongfully discharged them in violation of the collective-bargaining agreement and that their respective unions breached their duty of fair representation. Georgia Power Company was joined on a pendent state claim of false imprisonment. Concluding that the Sec. 301 action was barred by the six-month limitations period under Sec. 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b) (1982), the district court granted summary judgment in favor of the defendant employer and unions. The court also granted summary judgment in favor of Georgia Power on the merits of the false imprisonment claim. We affirm in part and reverse in part.I.
 
 
 2
 Ralph Hill and Walter Wadley were employees of Superior, a subcontractor who provided services for Georgia Power at Plant Scherer, an electric generating plant then under construction. Hill was a member of the United Brotherhood of Carpenters and Joiners ("Carpenters"); Wadley was a member of the Construction, Production & Maintenance Workers ("Construction Workers"). Both men worked the 8:00 a.m. to 4:00 p.m. shift and customarily rode to work with Winifred Davis, a fellow employee who they paid $20 per week for transportation to and from the site.
 
 
 3
 On the morning of July 14, 1982, Davis was driving Hill and Wadley to work as usual. Upon nearing the plant, Davis became concerned about the presence of beer cans in his car. Lest he or the other men be accused of coming to work inebriated, they decided to pitch out the incriminating containers. As he was leaving the grounds at the end of his shift, Georgia Power security guard Robert Arnold saw beer cans being thrown from the car and circled back to stop the men at the security gate. A large sign at the gate clearly stated that all cars entering Plant Scherer were subject to search. Both plaintiffs were aware of this rule, having been searched on prior occasions.
 
 
 4
 Security guard Arnold accused Davis, Hill and Wadley of drinking and told them to go home for the day. The men hotly denied the charge and refused to leave the plant grounds, offering instead to take a breathalyzer test to prove they had not been drinking. At that point, Davis was told to pull his car around the guard shack for a search. No one objected. Stuffed up under the driver's seat, a guard found a brown paper bag containing 20 smaller packages of a substance that later proved to be 1.7 ounces of marijuana. Butts from marijuana cigarettes, commonly known as "roaches," were also found in the ashtray located in the center console of the car, equally accessible to all of the occupants.
 
 
 5
 The security guards immediately detained the three men, read them their Miranda warnings, gave each of them a pat-down search and escorted them into the guard shack. The Monroe County Sheriff's Department was called. While awaiting the deputies' arrival, security guards questioned each man separately about the marijuana. All three strenuously denied owning or having any knowledge of the contraband, despite being told that if they would all identify the bags as belonging to one of them, the other two would be released. Upon reaching the scene, the Monroe County deputies arrested Davis, Hill and Wadley, charging them with possession of a controlled substance.
 
 
 6
 Georgia Power immediately barred the men from the plant grounds. Since they could no longer come on the property to work, Superior discharged all three men the next day and issued them final paychecks. Promptly after his release on bond from the Monroe County jail, Wadley contacted his union and told business agent Dave Crosslin what had happened. Hill likewise informed his union representative of the incident. Crosslin asked Georgia Power officials to let the men remain on the job until they were actually convicted of a crime, but the company refused.
 
 
 7
 Officials from both the Carpenters' and the Construction Workers' unions told Hill and Wadley that nothing could be done to help them until the criminal charges were resolved. Moreover, Hill understood that he was unlikely to be allowed back on the plant grounds even if the charges were dismissed. After speaking to the business agent for his local in July 1982, Hill never asked the union to file a grievance on his behalf nor otherwise pressed the matter. Wadley, however, checked back with Crosslin in August 1982 and was again told a grievance would not be appropriate until he resolved the pending charges. The record indicates Wadley inquired of Crosslin informally about his problem several times in the succeeding months, always to no avail.
 
 
 8
 The criminal charges came to naught. After a preliminary hearing to determine "probable cause," Monroe County Magistrate James Sutton bound the cases over to the grand jury, and indictments were returned. The state, however, failed to prosecute and the cases went no further. Demands for trial[1] were filed on December 7, 1983. When the cases did not come up for trial during the following two terms of court, the charges were automatically dismissed for want of prosecution. Hill and Wadley were formally acquitted and discharged on January 25, 1985.
 
 
 9
 Learning from Davis that the criminal charges either had been or were about to be dismissed, on March 14, 1984, Crosslin wrote Georgia Power asking that Davis and Wadley be reinstated. Georgia Power replied that the Monroe County Superior Court clerk showed the charges as still pending. The union evidently took no further steps to assist Wadley. Wadley filed the instant lawsuit on July 11, 1984, less than six months after his union took its final action. Hill filed his suit the same day.
 
 
 10
 Recognizing that the six-month limitations period set out in Sec. 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b),[2] governed hybrid Sec. 301 claims, the district court held that the actions were time-barred and granted summary judgment in favor of Superior and the unions. The district court concluded that Hill's cause of action accrued no later than July 1982 and Wadley's cause of action accrued no later than August 1982. Under this view, a suit filed in July 1984 came some 18 months too late.
 
 II.
 STATUTE OF LIMITATIONS
 
 11
 Plaintiffs brought "hybrid" suits under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185,[3] alleging that their employer discharged them in violation of the collective-bargaining agreement and that their respective unions breached their duty of fair representation.[4] In DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court decided that the six-month statute of limitations contained in Sec. 10(b) of the National Labor Relations Act applied to hybrid Sec. 301 suits such as this one. The Eleventh Circuit has held that DelCostello applies retroactively. Rogers v. Lockheed-Georgia Co., 720 F.2d 1247 (11th Cir.1983); see also Edwards v. Sea-Land Service, Inc., 720 F.2d 857 (5th Cir.1983).
 
 
 12
 The Court in DelCostello did not address when the six-month period begins to run. However, because a hybrid Sec. 301 claim involves separate, yet interdependent, claims against the employer and the union, this court recently concluded that the separate causes of action "accrue simultaneously" for statute of limitations purposes. Proudfoot v. Seafarer's International Union, 779 F.2d 1558 (11th Cir.1986), vacating in part 767 F.2d 1538 (11th Cir.1985). Thus, in Proudfoot, we held that it was error to grant the employer summary judgment based on the date the employee was discharged when the union subsequently initiated grievance proceedings and the Sec. 301 action was otherwise timely.
 
 
 13
 Generally, a cause of action accrues under Sec. 301, and the statute of limitations begins to run, when in the exercise of reasonable diligence the claimant knew or should have known of the injury. Howard v. Lockheed-Georgia Co., 742 F.2d 612 (11th Cir.1984); Benson v. General Motors Corp., 716 F.2d 862 (11th Cir.1983). As the Proudfoot court explained:
 
 
 14
 [T]he timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or the date on which the employee knew or should have known of the employer's final action, whichever occurs later.... By final action we mean the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage.
 
 
 15
 Proudfoot, supra (emphasis added). See also Hayes v. Reynolds Metals Co., 769 F.2d 1520 (11th Cir.1985), rev'ing 585 F.Supp. 508 (N.D.Ala.1984); Samples v. Ryder Truck Lines, Inc., 755 F.2d 881 (11th Cir.1985).
 
 
 16
 When the cause of action accrued is normally a question of fact, Samples, supra at 887, though in certain instances the issue can be resolved on a motion for summary judgment. See, e.g., Samples, supra (action accrued when union ran out of time to assert underlying claim); Howard, supra (action accrued when appellant actually knew his grievance had been denied even though written notice followed later); Benson, supra (action accrued when seniority lists were posted). Samples and Howard involved situations where grievance procedures were initiated and brought to a conclusion. The claim in Benson evidently was not grieved or could not be, for the court did not discuss what effect grievance procedures might have on the limitations period. In the instant case, no grievances were ever filed in Wadley's case, because union officials may have led him to believe his claim was not ripe as long as the marijuana charge was pending.
 
 
 17
 Against this backdrop of law, we will now consider whether the district court erred in granting summary judgment in favor of Superior and the unions on statute of limitations grounds.
 
 A. Summary Judgment in Wadley Case
 
 18
 Superior discharged Wadley on July 15, 1982--one day after Georgia Power barred plaintiffs and Winifred Davis from Plant Scherer grounds upon finding marijuana in Davis' car. The undisputed facts in the record reveal that Superior took no further action in the matter after that date.
 
 
 19
 The Construction Workers union, however, led Wadley to believe that something could be done for him if his criminal case terminated favorably. In fact, business agent Crosslin specifically told Wadley in July and August 1982 that a grievance would be premature until the marijuana charges were resolved. Accordingly, Wadley did not file a written grievance within the time allowed by the collective-bargaining agreement.[5] Instead, he relied in good faith on what Crosslin told him and awaited the outcome of the charges pending before Monroe County Superior Court.[6] During the intervening months, Wadley evidently spoke to Crosslin several times about his situation, only to be told repeatedly that nothing could be done while the criminal charges remained outstanding.
 
 
 20
 Appellees argue Wadley knew early on that the union did not plan to grieve his dismissal and contend that the six-month limitations period should run from August 1982. As late as March 1984, however, Crosslin wrote Georgia Power seeking reinstatement for Wadley and Davis. In light of that letter and the fact that union officials may have led Wadley to believe relief might be forthcoming when his criminal case concluded, summary judgment was not appropriate on the limitations issue. Compare Proudfoot, supra (involving somewhat similar facts).
 
 
 21
 This view is in keeping with the principles of equitable tolling enunciated in Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), where Justice Black wrote:
 
 
 22
 [N]o man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.... The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage.
 
 
 23
 Id. at 232-34, 79 S.Ct. at 761-63, 3 L.Ed.2d at 772-73, citing Union Mutual Life Insurance Co. v. Wilkinson, 80 U.S. (13 Wall) 222, 20 L.Ed. 617 (1872).
 
 
 24
 The former Fifth Circuit[7] has applied these equitable principles to cases arising under Title VII and the Age Discrimination in Employment Act ("ADEA"), both of which provide a 180-day notice period similar to the six-month statute of limitations in Sec. 10(b). For example, in Coke v. General Adjustment Bureau, 640 F.2d 584 (5th Cir.1981), reh'g en banc, 616 F.2d 785 (5th Cir.1980), the court held summary judgment inappropriate where the employer may have lulled plaintiff into not filing a timely ADEA claim by leading the former employee to believe he would be reinstated. And in Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir.1975), the court found summary judgment inappropriate where it appeared plaintiff did not realize she had a cause of action under Title VII because her employer misled her about why she was discharged. See also Chappell v. Emco Machine Works Co., 601 F.2d 1295 (5th Cir.1979) (concluding principles of equitable tolling apply to Title VII's 180-day notice period but finding no evidence to warrant tolling). Other circuits also have applied principles of equitable tolling in similar circumstances.[8]
 
 
 25
 Common sense and case law suggest that principles of equitable tolling apply with equal force to actions governed by the six-month limitations period of Sec. 10(b).[9] Indeed, the Court in DelCostello expressly recognized the possibility of tolling the six-month period when it remanded one of the two cases before it for further proceedings. DelCostello, supra 462 U.S. at 172, 103 S.Ct. at 2294-95, 76 L.Ed.2d at 494. See also Mason v. Continental Group, Inc., 569 F.Supp. 1241 (S.D.Ala.1983), aff'd, 763 F.2d 1219 (11th Cir.1985) (assuming without deciding that union could have misled plaintiff about the availability of grievance procedures).
 
 
 26
 We are of the opinion that this case presents facts that may warrant tolling the Sec. 10(b) limitations period until March 1984 when the Construction Workers' union took its last action on Wadley's behalf. In any event, a genuine issue of material fact exists as to whether the union, by its words and deeds, lulled Wadley into inaction, thus precluding summary judgment on statute of limitations grounds.
 
 
 27
 Since it was error to grant summary judgment in favor of the union, it was likewise error to grant the employer summary judgment. Under the rubric of Proudfoot, both causes of action under Sec. 301 accrued simultaneously, even though Superior has done nothing since the date it discharged Wadley. Accordingly, the case must be remanded for further proceedings consistent with this opinion.
 
 B. Summary Judgment in Hill Case
 
 28
 Superior also discharged Hill on July 15, 1982. Like Wadley, Hill promptly notified his union representative about the incident; but there any resemblance between the two cases ends.
 
 
 29
 Officials from the Carpenters' union told Hill nothing could be done to help him while the criminal charges were pending. Moreover, Hill, by deposition, stated he understood it was unlikely he would be allowed back on Georgia Power property, regardless of the outcome of his case, so he never asked the union to grieve his dismissal. In marked contrast to Wadley, Hill did not persist in pressing the matter or in seeking aid from his union.
 
 
 30
 On these facts, nothing compels the application of equitable tolling principles to the six-month limitations period. It was not error for the district court to conclude as a matter of law that Hill's cause of action accrued no later than July 1982, when he first knew he had lost his job and learned that any assistance from his union was unlikely. See Samples v. Ryder Truck Lines, Inc., supra; Howard v. Lockheed-Georgia Co., supra; Benson v. General Motors Corp., supra. Under the six-month limitations period of Sec. 10(b), his hybrid Sec. 301 action was thus barred after January 1983 and a lawsuit filed in July 1984 was untimely. The district court properly granted summary judgment in favor of Superior and the union.
 
 PENDENT JURISDICTION AND FALSE IMPRISONMENT
 
 31
 Appellants challenge the district court's decision to grant summary judgment in favor of Georgia Power on the merits of the pendent false imprisonment claim. Georgia Power contends the district court lacked jurisdiction to entertain the state law claim. Assuming arguendo that jurisdiction was proper, however, appellee maintains the court did not err in concluding that no genuine issue of material fact existed as to the legality of appellants' detention under the circumstances.
 
 
 32
 The district court exercised jurisdiction over the false imprisonment claims under the doctrine of "pendent jurisdiction," as enunciated in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). For a federal court properly to assert pendent jurisdiction over a state law claim, Gibbs requires that (1) the court have jurisdiction over a substantial federal claim and (2) "[t]he state and federal claims ... derive from a common nucleus of operative fact." Id. at 725, 86 S.Ct. at 1140, 16 L.Ed.2d at 228. See also Shahawy v. Harrison, 778 F.2d 636 (11th Cir.1985); L.A. Draper & Son v. Wheelaborator-Frye, Inc., 735 F.2d 414 (11th Cir.1984); Jackson v. Stinchcomb, 635 F.2d 462 (5th Cir.1981). Whether to exercise pendent jurisdiction over a state law claim is a decision committed to the sound discretion of the trial court. United Mine Workers v. Gibbs, supra 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228; Shahawy v. Harrison, supra; L.A. Draper & Son, supra at 427.
 
 
 33
 By bringing hybrid Sec. 301 actions against Superior and their respective unions, appellants properly made a "substantial federal claim," as Gibbs mandates. The remaining inquiry is whether the state law claims of false imprisonment and the hybrid Sec. 301 claims derive from "a common nucleus of operative fact." Georgia Power maintains they do not. The district court concluded that the requisite factual nexus was present, however, and its decision can be overturned only for an abuse of discretion. Shahawy v. Harrison, supra; L.A. Draper & Son, supra at 420.
 
 
 34
 We find no abuse of discretion, given that the Sec. 301 claims and the false imprisonment claims both arose from the search of Davis' vehicle and the subsequent discovery of marijuana hidden under the driver's seat. Moreover, keeping the state and federal claims together promoted considerations of convenience and judicial economy. Accordingly, it was not error for the district court to exercise pendent jurisdiction over the state law claims.
 
 
 35
 We also conclude that summary judgment in favor of Georgia Power on the merits of the false imprisonment claims was proper. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. Sec. 51-7-20 (Michie 1982) (emphasis added). Proof that a detention was lawful negates an essential element of the tort and serves as a complete defense to a charge of false imprisonment.[10] See Conoly v. Imperial Tobacco Co., 63 Ga.App. 880, 12 S.E.2d 398 (1940). Having reviewed the record, we are satisfied that no genuine issue of material fact existed as to the legality of appellants' detention by Georgia Power security guards.
 
 
 36
 Hill and Wadley argue that Georgia Power committed the tort of false imprisonment when its agents detained them for possession of a controlled substance without first procuring a warrant. The law applicable to false imprisonment cases premised on a warrantless arrest was discussed recently in Collins v. Sadlo, 167 Ga.App. 317, 306 S.E.2d 390 (1983). Judge Carley stated therein:
 
 
 37
 Whoever arrests or imprisons a person without a warrant is guilty of a tort, unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law; and the burden of proving the existence of the facts raising the exception is upon the person making the arrest or inflicting the imprisonment.... Where the arrest is without a warrant and is illegal, no amount of good faith or probable cause will excuse the defendants.
 
 
 38
 Id. at 319, 306 S.E.2d at 391, citing Vlass v. McCrary, 60 Ga.App. 744, 5 S.E.2d 63 (1939).
 
 
 39
 Accordingly, to escape civil liability for a warrantless arrest, a defendant not only must show that probable cause existed for the arrest, but also that exigent circumstances obviated the need to obtain a warrant. "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime has been committed." Moore v. State, 174 Ga.App. 826, 331 S.E.2d 115 (1985); Chaney v. State, 133 Ga.App. 913, 213 S.E.2d 68 (1975). The exigent circumstances that justify an exception to the warrant requirement are set out in O.C.G.A. Secs. 17-4-20 and 17-4-60.[11] Notably, Sec. 17-4-20(a) authorizes a law enforcement officer to make an arrest with or without a warrant "if the offense is committed in his presence or within his immediate knowledge." Section 17-4-60 contains a similar provision for arrests by private citizens.
 
 
 40
 Applying the foregoing principles of law to the instant case, appellants' detention was entirely proper. The men voluntarily consented to be searched. Discovering packages of what appeared to be marijuana underneath the driver's seat gave the security guards ample probable cause to believe a crime had been committed. Compare Castillo v. State, 166 Ga.App. 817, 305 S.E.2d 629 (1983); Chitwood v. State, 166 Ga.App. 62, 303 S.E.2d 307 (1983); Buday v. State, 150 Ga.App. 686, 258 S.E.2d 318 (1979); Ward v. State, 137 Ga.App. 462, 224 S.E.2d 96 (1976). Indeed, a crime--possession of a controlled substance--had been committed within the presence and immediate knowledge of the security guards, thus furnishing the exigent circumstances required under the Georgia Code to justify a warrantless arrest. See O.C.G.A. Secs. 17-4-20(a) and 17-4-60. On these uncontroverted facts, one cannot say the security guards acted unlawfully in holding appellants until a deputy sheriff arrived.
 
 
 41
 Hill and Wadley, however, emphasize that the marijuana was discovered beneath the driver's seat and contend that under Georgia law drugs found in an automobile are presumed to belong to the driver or owner of the vehicle. See Moore v. State, 155 Ga.App. 149, 270 S.E.2d 339 (1980). Mere presence in an automobile where contraband is found, they argue, is not a crime. See Parker v. State, 155 Ga.App. 617, 271 S.E.2d 871 (1980). What appellants are evidently suggesting is that Georgia law gave the security guards probable cause to arrest only Davis, the driver of the car; ergo, any detention of Hill and Wadley must have been unlawful. This argument is meritless.
 
 
 42
 In assessing the legality of a detention, the issue is not whether the person detained was actually guilty of a crime, just whether a reasonably prudent man had good cause to believe a crime had been committed. See Diamond v. Marland, 395 F.Supp. 432 (S.D.Ga.1975). Numerous Georgia cases have upheld the warrantless arrest of passengers riding in cars where contraband was found, especially where the illicit substance was equally accessible to more than one occupant of the vehicle. See, e.g., Castillo v. State, supra (drugs hidden under rear seat); Chitwood v. State, supra (marijuana found on floorboard on driver's side of car); Buday v. State, supra (torn sack leaking white powder found on front floorboard); Ward v. State, supra (plastic bag of marijuana fell onto floorboard from underneath passenger's seat).
 
 
 43
 In this case, security guards discovered 20 small packages of marijuana stuffed underneath the driver's seat and the remains of marijuana cigarettes in an ashtray accessible to all occupants of the vehicle. All three men denied ownership or knowledge of the contraband. Given the impossibility of ascribing ownership to any one individual, there was probable cause to believe that any or all of the men could have possessed the marijuana, thereby committing a criminal act in the presence of the security officers. Faced with this dilemma, Georgia Power's guards simply held all three men until the deputy sheriff arrived, leaving it to a court of law to determine which of them, if any, were guilty of possessing a controlled substance.
 
 
 44
 The facts reveal that ample probable cause existed for the arrest. Exigent circumstances were present. It was not up to the guards to determine which of the men owned the contraband. That job belonged to a judge or jury. See Moore v. State, supra, 155 Ga.App. at 151, 270 S.E.2d at 340. Accordingly, it appears that appellants' detention was not "unlawful" within the meaning of O.C.G.A. Sec. 51-7-20.
 
 III.
 
 45
 We hold that: (1) the district court erred in granting summary judgment in favor of Superior and the Construction Workers' union where a genuine issue of material fact existed as to when appellant Wadley's cause of action accrued; (2) summary judgment in favor of Superior and the Carpenters' union on appellant Hill's hybrid Sec. 301 claim was proper; and (3) summary judgment in favor of Georgia Power on the false imprisonment claims was proper.
 
 
 46
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Anthony A. Alaimo, Chief U.S. District Judge for the Southern District of Georgia, sitting by designation
 
 
 [1]
 Under O.C.G.A. Sec. 17-7-170 (Michie 1982), a criminal defendant may exercise the common law right to a speedy trial by demanding a trial. If two terms of court elapse after the demand without a trial, the defendant is automatically acquitted and discharged
 
 
 [2]
 Section 10(b) provides, in pertinent part: "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made."
 
 
 [3]
 Section 301 provides, in pertinent part:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [4]
 The Supreme Court enunciated the theory of a hybrid Sec. 301 action and delineated its contours in Hines v. Anchor Motor Freight, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), and Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)
 
 
 [5]
 The Plant Scherer collective-bargaining agreement provided a three-step grievance procedure that culminated in binding arbitration. Article IX provided that any grievance which could not be resolved informally within three days "shall be reduced to writing and taken up by the Business Manager of the local union and the employer's job site construction management."
 
 
 [6]
 For reasons unclear to this court, the criminal charges languished on the docket for many months. At oral argument, appellants' counsel attributed this state of affairs in part to the sudden and untimely death of appellants' former counsel
 
 
 [7]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc ), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [8]
 See, e.g., Aronsen v. Crown-Zellerbach, 662 F.2d 584 (9th Cir.1981); Naton v. Bank of California, 649 F.2d 691 (9th Cir.1981); Wilkerson v. Siegfried Insurance Agency, Inc., 621 F.2d 1042 (10th Cir.1980); Bonham v. Dresser Industries, Inc., 569 F.2d 187 (3rd Cir.1977)
 
 
 [9]
 The rationale behind the six-month limitations period of Sec. 10(b) and the 180-day notice periods of Title VII and the ADEA is quite similar. Congress selected an abbreviated limitations period for both statutes to facilitate the twin goals of preventing stale claims and encouraging prompt resolution of employment disputes. As to the purposes underlying Sec. 10(b), see generally Local Lodge No. 1424 v. NLRB, 362 U.S. 411, 424, 80 S.Ct. 822, 831, 4 L.Ed.2d 832, 842 (1960); NLRB v. Auto Warehousers, Inc., 571 F.2d 860, 863 (5th Cir.1978)
 
 
 [10]
 See O.C.G.A. Sec. 51-11-1 (Michie 1982) (authorization to act is a complete defense to a tort claim)
 
 
 [11]
 O.C.G.A. Sec. 17-4-20(a) provides:
 An arrest for a crime may be made by a law enforcement officer either under a warrant or without a warrant if the offense is committed in his presence or within his immediate knowledge, if the offender is endeavoring to escape, if the officer has probable cause to believe that an act of family violence ... has been committed, or for other cause if there is likely to be a failure of justice for want of a judicial officer to issue a warrant.
 O.C.G.A. Sec. 17-4-60 provides:
 A private person may arrest an offender if the offense is committed in his presence or within his immediate knowledge. If the offense is a felony and the offender is escaping or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion.
 We need not determine whether the Georgia Power security guards were public or private actors because Secs. 17-4-20(a) and 17-4-60 contain identical legal standards for arresting an individual who is committing a crime in the presence or immediate knowledge of another. See Harris v. State, 128 Ga.App. 22, 195 S.E.2d 262 (1973); Piedmont Hotel Co. v. Henderson, 9 Ga.App. 672, 72 S.E. 51 (1911).