Donald R. McCOY and Robert M. Baucom, Plaintiffs,

v.

UNC AVIATION SERVICES and Professional Helicopter Pilots Association, Defendants.

Civ. A. No. 93–T–537–S.

United States District Court, M.D. Alabama, Southern Division.

Oct. 22, 1993.

Charles Neville Reese, Reese & Reese, Daleville, AL, for plaintiffs.

Jonathan S. Harbuck, Kullman, Inman, Bee, Downing & Banta, Birmingham, AL, George C. Longshore, Longshore, Nakamura & Quinn, Birmingham, AL, for defendants.

---

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

██ Plaintiffs Donald R. McCoy and Robert M. Baucom brought this "hybrid suit" under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, claiming that their former employer, defendant UNC Aviation Services (hereinafter "UNC Aviation"), breached a provision of a collective bargaining agreement; they further charge that their former union, defendant Professional Helicopter Pilots Association (hereinafter "PHPA"), breached its fiduciary duty of fair representation by mishandling the ensuing grievances filed under the agreement. The defendants jointly move for summary judgment on alternative grounds: first, that this lawsuit is time barred and, second, that the evidence does not support the plaintiffs' claims. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." All the evidence must be considered "in the light most favorable to the non-moving party," with all reasonable doubts resolved in favor of the non-moving party. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). If the evidence favoring the nonmoving party is merely colorable, or is not significantly probative, summary judgment is appropriate.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). For the reasons which follow, summary judgment will be entered in favor of defendants.

### I. BACKGROUND

#### A. Article 10 of the Collective Bargaining Agreement

The United States Army has, over the years, contracted with a number of different civilian companies to provide flight training services to military flight students at the Army's military installation at Fort Rucker, Alabama. One of these companies, UNC Aviation, began providing such services in January of 1989.

Under a collective bargaining agreement, PHPA served as the exclusive bargaining representative for a UNC Aviation unit of employees at Fort Rucker. The bargaining unit consisted of non-supervisory employees, such as "method-of-instruction" pilots, instructor pilots, simulator flight pilots, and support personnel. The "method-of-instruction" pilots, commonly referred to as "MOI" pilots, trained newly hired pilots on how to serve as instructor pilots. The bargaining unit did not include supervisory employees.

Beginning in July 1986, supervisors were no longer allowed to accrue seniority for purposes of layoffs and rehirings. However, they were to allowed to retain any seniority they may have obtained as supervisors prior to that date. In addition, although Article 10 of the collective bargaining agreement expressly states that seniority was to be computed from the "original date of hire," UNC Aviation and PHPA have interpreted the article to provide that those supervisors who later move into non-supervisory jobs—that is, bargaining-unit jobs—are allowed to accrue seniority with their seniority calculated from the dates of their move into the bargaining-unit jobs.

In the early 1990's, UNC Aviation and PHPA began to have a number of disputes over the correct seniority dates for PHPA members. The problem came to a head when several flight instructors, who had been

laid off, complained that not only were their seniority dates incorrect, but that the seniority dates for some of those ahead of them were incorrect. Because of these errors, UNC Aviation had to reinstate and pay lost wages and benefits to a number of company employees.

As part of its investigation into the seniority dates, PHPA questioned whether several employees—who, after 1986, had moved from supervisory jobs to bargaining-unit jobs—had been incorrectly given seniority credit for time in management. McCoy and Baucom were among those whose seniority dates were questioned. Because many employment records had been lost, PHPA had to reconstruct the employment history for these employees. These records could not be found because, beginning in 1985 and until UNC Aviation took over the flight training program in 1989, the Army contracted with a number of different civilian companies who often took their employment records with them.

PHPA determined that, although McCoy was hired on June 22, 1987, and although Baucom was hired on October 1, 1987, their seniority did not accrue on those dates because they were hired into supervisory positions; their seniority, according to the union, accrued much later, when they assumed non-supervisory bargaining-unit jobs. McCoy and Baucom contested this conclusion and claimed that they were hired into non-supervisory positions as MOI pilots. They also argued that they had been misled by the civilian employing company into expecting that they would accrue seniority with their initial employment. After an investigation, PHPA refused to change McCoy's seniority date but elected to give him partial credit for the time he claimed to have worked as an MOI pilot. The union concluded that no relief was in order for Baucom. PHPA reached these conclusions in November 1991 and published the new seniority lists in January 1992.

## B. *Appendix B.11(e) of the Collective Bargaining Agreement*

In December 1991, McCoy tried another route to have his seniority date changed to his date of hire. Appendix B.11(e) of the collective bargaining agreement provides that an MOI pilot will "retain his seniority at the level consistent with his *original date of hire* if he elects or company needs require a permanent change of status." (Emphasis added). McCoy requested transfer from an MOI pilot to an instructor pilot in an attempt to take advantage of this special provision. McCoy argued that Appendix B.11(e) allowed for an exception to those requirements in Article 10 of the collective bargaining agreement which, as interpreted by the UNC Aviation and PHPA, provided that supervisors who later moved into bargaining-unit jobs could accrue seniority calculated only from the dates of their move into the bargaining-unit jobs. McCoy contended Appendix B.11(e) allowed MOI pilots to accrue seniority from the date of hire even if they had been hired into supervisory positions. PHPA rejected this interpretation. According to the union, Appendix B.11(e) was passed in response to a 1987 ruling of the National Labor Relations Board that MOI pilots are non-supervisory, rather than supervisory, positions; Appendix B.11(e) merely allows MOI pilots to retain their date-of-hire seniority *if* they were initially hired into non-supervisory MOI pilot positions. In other words, according to the union, Appendix B.11(e) is based on the premise that an MOI employee is entitled to seniority calculated from date of hire if he is entitled to such under Article 10. In December 1991, PHPA informed McCoy of its position and notified him that no action would be taken on his behalf. McCoy was subsequently laid off.[1]

One year later, Baucom made a similar attempt to avert layoff and have his seniority calculated from his date of hire through application of Appendix B.11(e). He requested a transfer from an MOI pilot to a flight instructor pilot. UNC Aviation refused to treat the appendix as allowing an exception to Article 10, and Baucom filed a grievance. PHPA, as it had done a year earlier, also rejected this interpretation and refused to pursue Baucom's grievance. Baucom was later laid off.

---

1. McCoy was later rehired and laid off again.

In April 1993, McCoy and Baucom filed this "hybrid suit" under § 301 of the Labor Management Relations Act, claiming that UNC Aviation and PHPA's interpretation of Appendix B.11(e) is incorrect. More specifically, they charge that PHPA violated its duty of fair representation by refusing to pursue their interpretation of Appendix B.11(e) and they charge that UNC Aviation violated the collective bargaining agreement by refusing to apply Appendix B.11(e) correctly to them.[2]

## II. DISCUSSION

■ In a "hybrid claim" brought under § 301, a plaintiff must establish *both* a breach of contract by the employer and a breach of the duty of fair representation by the union. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 163–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983). The suit, "as a formal matter, comprises two causes of action," *id.:* the suit "against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement," and the "suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." *Id.* Yet each claim, while distinct, is inextricably interdependent. To prevail against either the employer or the union or both, the employee must show *both* that the employer's action was contrary to the collective bargaining agreement and that the union breached its duty of fair representation. *Id.*

### A.

■ McCoy's claims against UNC Aviation and PHPA are time-barred. A uniform six-month limitation period prescribed by § 10(b) of the National Labor Relations Act, 29 U.S.C.A. § 160(b), applies in hybrid suits brought under § 301. *DelCostello,* 462 U.S. at 171–72, 103 S.Ct. at 2294. This limitation period begins to run from the point a reasonable plaintiff knew or should have known of either the union's final action or the employer's final action, whichever comes later, *Proudfoot v. Seafarer's International Union,* 779 F.2d 1558, 1559 (11th Cir.1986), and final action by the union is measured from the point where the grievance procedure has been exhausted or has otherwise broken down to the employee's disadvantage. *Id.*

■ McCoy admits that he knew in December 1991 that UNC Aviation and PHPA had rejected his interpretation of Appendix B.11(e) and would take no action in his favor. He contends, however, that the statute of limitations should be tolled on equitable grounds because UNC Aviation led him to believe that relief might still be forthcoming. The company, according to McCoy, promised to revisit his case if additional evidence were discovered.

First, there is no basis for tolling UNC Aviation's final decision. The company's promise to reexamine McCoy's case upon discovery of additional evidence does not detract from the fact that it had made a final decision based on the evidence before it. *Contrast Hill v. Georgia Power Co.,* 786 F.2d 1071, 1073 (11th Cir.1986) (finding an issue of material fact when a union representative specifically and repeatedly told an employee that legal action would eventually be taken on his behalf). Second, there is even less reason for tolling PHPA's final decision. The company, not the union, made the so-called promise.

■ The court cannot, however, reach the same conclusion that Baucom's claims are time-barred. UNC Aviation and PHPA argue that, although Baucom did not seek to have Appendix B.11(e) applied to him until December 1992, within the six-month limitations period, his claims are still time-barred because his effort was merely an attempt to revisit an issue which had been resolved against McCoy a year earlier. However, un-

---

**2.** It could be inferred from the brief filed by McCoy and Baucom on September 20, 1993, that their claims extend beyond their challenge to UNC Aviation and PHPA's failure to apply Appendix B.11(e) to them to include the company and union's earlier investigation into and decisions about their seniority status. However, it is evident from their complaint filed in April 1993 and from the pretrial order entered on September 21, 1993, that their claims are based on Appendix B.11(e) only.

til Baucom came within Appendix B.11(e)'s coverage, he had no basis to complain to UNC Aviation or to exhaust PHPA's grievance procedures. Baucom's claims are not time-barred. Nevertheless, because, as shown below, Baucom's claims lack merit, he is still not entitled to recover in this litigation.

## B.

■ To prevail in this litigation under the test announced in *DelCostello*, McCoy and Baucom must show: first, that UNC Aviation violated Appendix B.11(e) of the collective bargaining agreement and, second, that PHPA breached its duty of fair representation by refusing to pursue their interpretation of Appendix B.11(e). McCoy and Baucom have failed to establish either of these.

■ First, UNC Aviation and PHPA's interpretation of Appendix B.11(e) is correct. The appendix will not bear the interpretative weight that McCoy and Baucom wish to place on it—that is, that, under the appendix, an employee is entitled to seniority calculated from date of hire even if he or she was hired into management. This interpretation would be not only contrary to the overall thrust of the collective bargaining agreement, it would be illogical. Appendix B.11(e) was passed in response to a 1987 ruling of the National Labor Relations Board that MOI pilots are non-supervisory, rather than supervisory, positions. The only logical interpretation of Appendix B.11(e) is that it allows MOI pilots to retain their date-of-hire seniority *if* they were hired into non-supervisory MOI pilot positions. The intent behind the appendix was to place MOI pilots on a par with all other non-supervisory employees, with the result that all non-supervisory employees would be treated the same under Article 10. Under McCoy and Baucom's illogical reading of the appendix, MOI pilots would be treated more favorably than other non-supervisory employees.

■ In any event, even if McCoy and Baucom's interpretation of Appendix B.11(e) could be considered as a reasonable alternative to UNC Aviation and Baucom's interpretation, McCoy and Baucom still could not prevail in this litigation because the evidence does not support a claim that the PHPA breached its duty of fair representation. The United States Supreme Court has held that the test of fair representation provides wide latitude to a union. A union's breach of its duty of fair representation is nothing short of conduct that is "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Actions are "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside 'a wide range of reasonableness,' as to be irrational." *Air Line Pilots Association, Intl. v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). As the Supreme Court explained in *O'Neill*,

> "... Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities."

499 U.S. at 78, 111 S.Ct. at 1135–36. A court should not "weigh the wisdom ... nor ... decide whether the policy which it expresses offends the public welfare," *id.* (quoting from *Day–Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952)); it is sufficient if the "question is at least debatable." *Id.* (quoting from *United States v. Carolene Products*, 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938)). A discriminatory practice, furthermore, is one founded on "irrelevant, invidious, or unfair" motivations. *Breininger v. Sheet Metal Workers Intern.*, 493 U.S. 67, 73, 110 S.Ct. 424, 429, 107 L.Ed.2d 388 (1989) (quoting *Miranda Fuel Co., Inc.*, 140 N.L.R.B. 181 (1962), *enf. denied*, 326 F.2d 172 (2d Cir. 1963)).

First, McCoy and Baucom have not produced any evidence that PHPA's interpretation of Appendix B.11(e) was discriminatory or in bad faith—that is, that it was based on such irrelevant, invidious, or unfair motivations as race. Second, it cannot be concluded that the union's interpretation is so extreme as to be outside the range of reasonableness; indeed, as shown above, the union's interpretation is not only debatable, it is the only reasonable one. Third, a union is not obligated to advance all grievances. *McCollum v. Bolger*, 794 F.2d 602 (11th Cir. 1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987). In rejecting McCoy's and Baucom's grievances, PHPA acted responsibly based on its reasonable interpretation that Appendix B.11(e) should not be interpreted to favor MOI pilots over other non-supervisory employees. Finally, the fact that the union's actions left McCoy and Baucom worse off but benefitted another union member does not warrant a finding that the union breached its duty of fair representation. McCoy and Baucom point out that Richard James was able to take advantage of Appendix B.11(e) under the union's interpretation of the provision. James, however, had been hired into a non-management position and thus was treated the same as all other employees under both Article 10 and Appendix B.11(e). In any event, a union may pursue rational policies that leave some of its members worse off. *O'Neill*, 499 U.S. at 78–79, 111 S.Ct. at 1136. *See also Papavaritis v. Communication Workers of America*, 772 F.Supp. 604, 607 (S.D.Fla.1991), *aff'd*, 983 F.2d 1082 (11th Cir.1993) (table).

The court will therefore enter an appropriate judgment in favor of UNC Aviation and PHPA.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the Court that (1) the motion for summary judgment filed jointly by defendants UNC Aviation Services and Professional Helicopter Pilots Association on August 13, 1993, be and is hereby granted; and (2) that judgment is entered in favor of the defendants and against plaintiffs Donald R. McCoy and Robert M. Baucom, with plaintiffs taking nothing by their complaint.

It is further ORDERED that costs be and they are hereby taxed against plaintiffs, for which execution may issue.