**Douglas A. DOWTY, Plaintiff-Appellant,**

v.

**PIONEER RURAL ELECTRIC COOPERATIVE, INC., Utility Workers Union of America, Defendants-Appellees.**

**No. 83–3621.**

United States Court of Appeals, Sixth Circuit.

Argued July 9, 1985.

Decided Aug. 9, 1985.

Ted L. Earl, Earl, Warburton & Adams, Tom Davis, argued, Columbus, Ohio, for plaintiff-appellant.

Neil F. Freund, Freund, Freeze & Arnold, Jane Lynch, argued, Dayton, Ohio, for Pioneer Rural.

Sorrell Logothetis, Logothetis & Pence, David Stolow, argued, Dayton, Ohio, Donald F. Menagh, New York City, for Utility Workers.

Before MARTIN, CONTIE and WELLFORD, Circuit Judges.

PER CURIAM.

Plaintiff, Douglas Dowty, brought a hybrid § 301/fair representation claim against defendants Pioneer Rural Electric Cooperative ("Pioneer"), its employees, and the Utility Workers Union of America (the "Union") after an arbitration decision that prohibited him from pursuing a separate private business on pain of discharge. The district court granted summary judgment in favor of the two defendants holding the action was time barred under *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). We consider also whether this court has jurisdiction to hear the appeal.

Dowty worked as a lineman for Pioneer. While working for the company on a full-time basis, plaintiff "moonlighted" by sell-

ing and installing electrical generators. On September 15, 1980, Pioneer issued a rule which prohibited certain outside employment, including "any form of electrical work." This rule provided an employee the opportunity to cease the activity before being subject to discipline, which might include dismissal.

Shortly after issuing this rule Pioneer informed plaintiff that it would discharge him if he did not cease "moonlighting" in his electrical generator business. Dowty then initiated grievance procedures on November 30, 1980. Plaintiff was terminated for failing to discontinue his outside employment during 1981.

On May 15, 1981, a formal arbitration hearing was held following Dowty's grievance in accordance with the labor contract between Pioneer and defendant Union. The arbitration panel issued its award on June 24, 1981, which gave plaintiff ten days from the receipt of the award to discontinue his outside business as a condition to being reinstated without loss of seniority, but without back pay. Although not reflected in the award, the arbitration decision to which it was attached permitted plaintiff to continue selling the electrical generators, but did not permit him to continue installing or servicing them.

Edward Coggins, the Union's Regional Director, arranged for a July 7, 1981, meeting with plaintiff and two other union officials to discuss what the Union had done in representing Dowty and the status of the arbitration. Prior to the July 7th meeting, Coggins had contacted Harry Sworkin, the arbitration panel chairman, for a clarification of the last paragraph in the award,[1] specifically to determine what plaintiff would be permitted to do in his outside employment. Coggins claimed that Dworkin indicated that plaintiff could continue to sell electrical generators and perform related work. Coggins, however, noted that at the July 7th meeting plaintiff was read the contents of the arbitration award and had actual knowledge of the Union's position with respect to that award. Plaintiff does not contest that he was made aware of the arbitration award contents at that time.

Plaintiff disputes Coggins' claim with respect to his advice about what plaintiff would be permitted to continue to do under the terms of the award. Dowty claims that at the meeting, Coggins advised him "that under the terms of the Arbitration Decision and Award, [he] could no longer perform any electrical wiring outside of [his] employment with [the Company]." This representation, if made, would not comport with the arbitration panel's decision and award.

At this meeting, Dowty was told that he would receive a copy of the decision and the award by certified mail. He received them on July 10, 1981, but it was not until January 8, 1982, that plaintiff filed his hybrid § 301/fair representation claim in district court.

Both Pioneer and the Union claimed that plaintiff's claims were barred by the applicable state statute of limitations. The Supreme Court, however, issued its *DelCostello* decision while this case was pending, and the Union (but not Pioneer) filed a memorandum with the district court contending that plaintiff's claims were barred by the six-month limitations period of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) adopted in *DelCostello*. Immediately after the Union filed its memorandum raising the *DelCostello* defense, Pioneer filed a similar motion.

The district court granted defendants' motions for summary judgment based on the claimed six months' limitation period

---

**1.** Paragraph IV of the Award states:

It is the judgment of a majority of the Board of Arbitration that the grievant be accorded an opportunity to determine within ten (10) days from the date of receipt of this Award whether he will agree to discontinue his outside business activity as a condition of being reinstated to his employment, without loss of seniority but without reimbursement for any incidental loss of earnings.

AWARD SIGNED, ISSUED AND DATED BY THE CHAIRMAN, AT CLEVELAND, CUYAHOGA COUNTY, OHIO, THIS 24th DAY OF JUNE, 1981.

holding that plaintiff had filed his action one day beyond the limitation period. The court held that the period began to accrue on July 7, 1981, the date of the meeting. The district court, however, noted that "The Court will order that judgment be entered in favor of the Defendants once Pioneer files a *verified* copy ... of the collective bargaining agreement and the arbitration decision and award with the Court" (emphasis in original). The court's "first" decision was filed August 26, 1983, and plaintiff filed notice of appeal on September 6, 1983, ten days later. It was not until September 16, 1983, that the district court entered "final" judgment in favor of the defendants after receipt of the verified copies as specified in the August 26 order. The court noted in its September 16 order that "Plaintiff filed a Notice of Appeal on September 6, 1983, presumably from this Court's Decision and Entry of August 26, 1983, WHICH WAS NOT A FINAL ORDER. Plaintiff's counsel is urged ... to file a supplemental Notice of Appeal indicating that the appeal, itself, is taken from the within Order rather than from the Decision of August 26, 1983" (capitalization in original). Plaintiff, however, did not follow the court's recommendation and never filed a supplemental Notice of Appeal.

We first consider whether plaintiff has properly pursued his appeal to this court despite the fact that none of the parties have discussed this issue.

Plaintiff appealed from the district court's August 26 order, which that court itself characterized as an interlocutory order. Dowty did not follow the court's suggestion to file a supplemental notice of appeal following what the district court deemed to be its final order journalizing the entry of summary judgment in favor of defendants.

If the August 26, 1983, decision is deemed to be a final judgment despite the district court's characterization, then jurisdiction for the appeal lies under 28 U.S.C. § 1291; if it is not a final judgment, however, jurisdiction for this appeal would then have to be considered under 28 U.S.C.

§ 1292. (The district court never certified its August 26 order for appeal pursuant to § 1292(b).)

The Supreme Court in defining "finality" for purposes of the final judgment rule, has consistently held that an order which leaves nothing more than ministerial acts to be done and which otherwise ends the litigation on the merits meets the final judgment rule's requirements for jurisdiction to lie under 28 U.S.C. § 1291. *See, e.g., Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"); *Republic Natural Gas Company v. Oklahoma*, 334 U.S. 62, 67–69, 68 S.Ct. 972, 976–77, 92 L.Ed. 1212 (1948):

> the requirement of finality has not been met merely because the major issues in a case have been decided and only a few loose ends remain to be tied up—for example, where liability has been determined and all that needs to be adjudicated is the amount of damages ... On the other hand, if nothing more than a ministerial act remains to be done, such as the entry of a judgment upon a mandate, the decree is regarded as concluding the case and is immediately reviewable.

*See also, Cooper & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). *Brown Shoe Company v. United States*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), also suggests that jurisdiction does lie for an appeal from the instant case. There the Court found jurisdiction present in an antitrust action in which the order appealed from had disposed of every request for relief in the complaint and required complete divestiture of a subsidiary even though the details of the divestiture had not been ruled upon. *Id.* at 306–11, 82 S.Ct. at 1513–16. The Court noted "A pragmatic approach to the question of finality has been considered essential to the achievement of the 'just, speedy, and inexpensive determination of

every action': the touchstones of federal procedure." *Id.* at 306, 82 S.Ct. at 1513.

■ All that remained for defendants to do to conclude the proceedings under the August 26 order was to submit to the court verified copies of documents, copies of which had already been introduced into evidence. The district court clearly had already then determined the rights and obligations of the parties, and all that remained was the ministerial act of entry of final judgment in the court's records. We conclude under the circumstances that jurisdiction exists in this court to hear plaintiff's appeal.

Since we affirm the grant of summary judgment by the district court, we remand with instructions to enter final judgment *nunc pro tunc* in that court as of August 26, 1981, since the contents of the arbitration decision and award were then indisputedly known by all parties and the court.

■ As noted, plaintiff filed his complaint on January 8, 1982. If his cause of action accrued on July 7, 1981, when he learned of the arbitrator's award then the six month limitations period in § 10(b) time bars this action. *See Smith v. General Motors Corp.*, 747 F.2d 372 (6th Cir.1984) (en banc). If, as claimed by plaintiffs, his action accrued on July 10 when he actually received the arbitration papers then the instant action is not time-barred.

Plaintiff's own affidavit introduced into evidence indicates that he learned of the actual contents of the arbitration panel's award on July 7 when he met with union officials to discuss the situation. He had actual knowledge then of the award regardless of what the union officials told him about discontinuing his "moonlighting." He also knew on July 7 what the

union had done in pursuing his grievance to arbitration and that the union would no longer contest the award which adversely affected him.[2] There was no substantial factual controversy, then, concerning what plaintiff reasonably knew about the union's alleged breach of duty and the company's right to insist upon its rule limiting his outside business pursuits on July 7, 1981.

■ For purposes of a hybrid § 301/unfair representation action, the time the statute of limitations begins to run is when the claimant knows or should have known of the union's alleged breach of its duty of fair representation. *See Howard v. Lockheed-Georgia Co.*, 742 F.2d 612, 614 (11th Cir.1984); *Metz v. Tootsie Roll Ind., Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *Santos v. District Council,* 619 F.2d 963, 969 (2d Cir.1980); *Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir.) (per curiam); and *Northwest Ind. Credit Union v. Salisbury, et al.,* No. 84–1115 (6th Cir. 7/11/85) (unpublished per curiam).

Regardless of plaintiff's belief of what the arbitration award entailed, he claimed, essentially, that the Union had not adequately prepared and presented his position during the arbitration hearing. Dowty, however, knew of or learned about all the facts relating to the Union's preparation of his case by the July 7 meeting. Coggins' assertion was not contradicted that plaintiff had read the Union's post hearing brief several times. We find no error, then, in the determination by the district court:

> During the meeting held on [July 7, 1981], plaintiff learned of the arbitration panel's decision, read the hearing briefs of the union, ... and was informed of

---

**2.** In addition to that part of the award set out in footnote 1, it provided, in pertinent part:

> The Board of Arbitration finds and determines on the basis of the evidence adduced at the arbitration hearing, and consideration of documentary exhibits, and post hearing briefs, that the company's policy prohibiting certain types of "after-hours" work, or "moonlighting" on the part of its employees is reasonable, and within the recognized rights of

management... the company's policy was orally communicated to the grievant in 1973 at the time he was hired, and that said policy was set forth in written form in 1977,.... The union is accorded the contractual right in each instance to challenge a plant rule, or policy unilaterally drafted by the company including the right to grieve the application of a rule....

the response of the union to the decision. At that time, he was also aware of the union's conduct during the grievance and arbitration procedure, including the fact that the union had refused to permit him to be represented by his own counsel. *By July 7, plaintiff was armed with all the facts with which he (or his attorney) needed to draft [¶ 23 in the complaint], which alleges that the union breached its duty of fair representation.* In short, by July 7, 1981, plaintiff "knew or reasonably should have known that" the union, in his opinion had breached *its* duty of fair representation.

(emphasis added).

██ We are not persuaded by plaintiff's argument that he cannot be deemed to have knowledge until he receives *formal* notice of the arbitrator's decision and award. Failure of an employee to receive a copy of an arbitration decision does not toll the running of limitations periods in § 301 actions when he knows what the union has done to represent his interests and essentially the disposition of his grievance. *See Brown v. Duff Truck Lines, Inc.,* 557 F.Supp. 194, 196 (S.D.Ohio 1983). To uphold plaintiff's contention, as the district court cogently noted, even if a claimant knew about the contents of an arbitration decision, his cause of action would never accrue if he never obtained a copy of the decision. We reject plaintiff's contention accordingly.

We affirm the judgment of the district court that the six month's limitation bars plaintiff's claims but remand for entry of the district court's final judgment as of August 26, 1981.