812 F.2d 1407
 127 L.R.R.M. (BNA) 3296
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patrick J. LOEW, Daniel S. Ellis, Joseph F. Fidler, Michael
Glabecki, William Homer, Robert Jones, Enzo J. Lanari, Gary
V. Lattimer, Michael E. Lutz, John J. Mack, Claude J.
Mickler, Joseph Palko, Gordon L. Tomko, Larry D. Vance,
a.k.a. "Former Erie Lackawanna Carmen", Plaintiffs-Appellants.
v.
CONSOLIDATED RAIL CORPORATION, Transport Workers Union of
America, Brotherhood of Railway Carmen of the
United States and Canada, Defendants-Appellees.
 No. 85-3969.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1987.
 
 Before MARTIN, JONES and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs in this action brought under the Railway Labor Act, 45 U.S.C. Sec. 151 et. seq. (1982), appeal the summary judgment dismissal of their case. Finding no error in the district court's disposition of this case, we affirm.
 
 
 2
 The fourteen plaintiffs-appellants are former employees of the Erie Lackawanna Railway ("EL"). They became employees of the Consolidated Rail Corporation ("Conrail") following its creation in 1976. The defendants-appellees are the Transport Workers Union of America ("TWU"), which formerly acted as bargaining agent for workers of the Penn Central Railroad ("Penn Central"); the Brotherhood of Railway Carmen of the United States and Canada ("BRC"), which represented carmen of all the railroads consolidated into Conrail except Penn Central; and Conrail.
 
 
 3
 Conrail is a combination of several formerly bankrupt railroads. Congress ordered the formation of Conrail by passage of the Regional Rail Reorganization Act of 1973, as amended, 45 U.S.C. Secs. 701-797 (1982) ("3R Act"). The 3R Act mandated the creation of Conrail as a for-profit corporation that would acquire and operate the facilities of the Penn Central, Ann Arbor, Boston & Maine, Central of New Jersey, Erie Lackawanna, Lehigh and Hudson River, Lehigh Valley, and Reading railroads. Under the 3R Act, Conrail was required to offer employment to the employees of the bankrupt railroads. Id. Sec. 772(b) (1976), repealed by Pub.L. 97-35, Title XI, Sec. 1144(a)(1), 95 Stat. 669 (1981)[1]. Since many of the employees were represented in collective bargaining by various craft labor unions, the Act further required Conrail to assume existing collective bargaining agreements and also undertake the negotiation of new agreements. Id. The Act also provided that pending the completion of the new collective bargaining agreements, the employees of the bankrupt railroads "who have seniority on the lines, properties, or facilities acquired by [Conrail] ... shall have prior seniority roster rights on such acquired lines, properties, or facilities." Id. Sec. 774(a) (repealed 1981). The Act further mandated that Conrail and the labor unions were to negotiate "the procedure for determining the seniority of such employees [those from the bankrupt railroads] in their respective crafts or classes on [Conrail's] system which shall, to the extent possible preserve their prior seniority rights." Id. Sec. 774(b)(4) (repealed 1981).
 
 
 4
 Pursuant to this congressional mandate, Conrail undertook negotiations with TWU and BRC regarding the seniority rights of workers who were responsible for maintaining the railroad equipment (carmen). BRC represented the carmen employed by EL, and TWU represented the carmen employed by Penn Central. In December 1975, the three parties entered into a seniority agreement. The agreement, which was modified twice in 1976, provided for two types of seniority rights. First, the agreement merged all Conrail employees into a chronological list according to the date on which each employee was hired by his original railroad. This list was termed the "dovetailed" seniority list. In addition to this list, the agreement provided that each employee would essentially have a right of first refusal to jobs headquartered in the operating area of his original railroad. Thus, the standard rule that a job belonged to the employee who was first hired would be subject to exception if a worker in his former railroad's facilities exercised his prior right to a job claimed by a worker whose position commenced at an earlier date but with a different railroad. Following the sale of the bankrupt railroads to Conrail, the three defendants reached a single collective bargaining agreement, effective on September 1, 1977, that specifically incorporated the earlier seniority agreement.
 
 
 5
 After it began operations in April 1976, Conrail found it necessary to close some of its facilities. As a result, former EL facilities in the Cleveland area were closed. Plaintiffs, who had been EL employees in the Cleveland area, lost their prior rights with the closing of the EL lines, and their attempts to find other carmen positions were blocked by the exercise of prior rights against them by other Conrail employees. Because the seniority agreement negotiated by the defendants superimposed prior rights over the dovetailed seniority list, former EL employees found themselves constantly bumped by other employees who had been hired at a later date but had prior rights to certain jobs.
 
 
 6
 Plaintiffs' difficulty in exercising their dovetailed seniority rights was initially ameliorated by Subchapter V, Sec. 505 of the 3R Act, Sec. 775 (repealed 1981), which permitted protected Conrail employees deprived of employment to collect monthly cash payments until age 65. In 1981, however, Congress repealed Subchapter V and replaced it with Subchapter VII, which provided that a furloughed Conrail employee could collect only his railroad unemployment benefits plus $42 per day, to a maximum of $20,000. Id. Sec. 797.
 
 
 7
 The plaintiffs have been displeased with the seniority agreement negotiated by the defendants for some time. They have protested to their unions and attempted to exercise their dovetailed seniority rights with Conrail. On September 21, 1984, they filed a three count complaint against the defendants in federal district court. Count one of the complaint sought an equitable reformation of the seniority agreement affecting the plaintiffs. Count two asserted that BRC and TWU had breached the duty of fair representation that they owed to the plaintiffs in their negotiation of the seniority agreement. Count three alleged that the unions and Conrail had conspired to deprive the plaintiffs of their employment rights. The plaintiffs requested that the district court: (1) set aside the operating seniority agreement and order the defendants to negotiate a fair and equitable seniority pact, (2) enjoin Conrail from firing any plaintiff, (3) make appropriate redress to the plaintiffs who had been adversely affected by the seniority agreement since 1981, (4) assess $10,000,000 in damages against the defendants for counts two and three, and (5) order the defendants to pay attorneys fees and costs.
 
 
 8
 In April 1985, the three defendants filed motions for summary judgment. The district court granted the motions holding, inter alia, that: 1) federal law preempted the plaintiffs' common law contract reformation claim, and a cause of action for violation of fair representation was the only way that they could seek to overturn the seniority agreement, 2) the plaintiffs' action for violation of the unions' duty of fair representation was time-barred since it was filed more than six months after the action accrued,[2] and 3) the plaintiffs' failure to show a breach of the duty of fair representation warranted dismissal of the conspiracy claim against all three defendants.
 
 
 9
 The plaintiffs now appeal the district court's grant of summary judgment. We first address the plaintiffs' claim that the district court erred in holding that their claim was time-barred. Because we agree with the district court's holding on this issue, we need not address the other issues raised by plaintiffs on appeal.
 
 
 10
 In DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983), the Supreme Court held that an action against an employer for breach of a collective bargaining agreement and against a union for unfair representation must be brought within six months of the claim's accrual. This time period is drawn from 29 U.S.C. Sec. 160(b), where a six-month limitation is set for submitting charges of unfair labor practices to the National Labor Relations Board. The six-month limitation period has been applied to unfair representation suits brought pursuant to the Railway Labor Act. See, e.g., United Independent Flight Officers, Inc., v. United Airlines Inc., 756 F.2d 1262, 1270 (7th Cir.1985); Welyczko v. U.S. Air, Inc., 733 F.2d 239, 240 (2nd Cir.), cert. denied, 469 U.S. 1036 (1984). This circuit has held that the six-month limitations period extends to all unfair representation claims. See Adkins v. International Union of Electrical Workers, 769 F.2d 330, 335 (6th Cir.1985); see also United Independent Flight Officers, Inc., 756 F.2d at 1270 (specifically applying six-month limitation period to unfair representation claim in the negotiation process). Generally, the statute of limitations begins to run when the potential plaintiff "knows or should have known of the union's alleged breach of its duty of fair representation." Dowty v. Pioneer Rural Elec. Co-Op., Inc., 770 F.2d 52, 56 (6th Cir.), cert. denied, 106 S.Ct. 572 (1985); see also Adkins, 769 F.2d at 335.
 
 
 11
 The district court applied these two legal doctrines to the plaintiffs' claim and concluded that it was time-barred. The court first concluded that the plaintiffs were in fact asserting two separate unfair representation claims. The first was in regard to the original seniority agreement negotiated in 1975, and the second was in regard to the unions' failure to renegotiate the seniority agreement following the 1981 repeal of Subchapter V. As to the 1975 claim, the court concluded that since Conrail had posted a consolidated seniority roster in late 1977, and all the plaintiffs had received a copy of the collective bargaining agreement that included the seniority agreement, they all should have known at that time that the seniority agreement included prior rights. Therefore, they knew or should have known as of 1977 that the unions might have breached their duty of fair representation. Consequently, this claim was time-barred.
 
 
 12
 The district court then considered the 1981 claim and concluded that this claim was also untimely because the plaintiffs knew or should have known of the changes in benefits in 1981 and should have taken steps to force renegotiation by mid-1982. The court noted that the plaintiffs had "not pled any set of facts or introduced any evidence which would show that they complied with the six month statute of limitations by filing this lawsuit three years after the repeal of Title V [sic]--a change which they knew or should have known of almost immediately." App. 45.
 
 
 13
 We find no error in the district court's resolution of this issue. The plaintiffs' claim is clearly time-barred. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Actually, Pub.L. 97-35, Title XI, Sec. 1144(a)(1), 95 Stat. 669 (1981), repealed all of Subchapter V of the 3R Act, 45 U.S.C. Secs. 771-780. For the sake of brevity, subsequent references to these sections will carry an abbreviated indication of repeal
 
 
 [2]
 The court further concluded that even if the claim weren't time-barred, the plaintiffs had failed to aver facts that would state a claim of unfair representation