840 F.2d 18
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James TOL, Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA; General Teamsters
Union, Local No. 406, Central Conference of Teamsters, ABF
Freight Systems, Inc., and East Texas Motor Freight Lines,
Inc., Defendants-Appellees.
 No. 86-2175.
 United States Court of Appeals, Sixth Circuit.
 Feb. 19, 1988.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff appeals from the district court's decision holding that plaintiff's claim is barred by the six-month statute of limitations applicable in hybrid section 301 cases. Because we believe there are material factual issues that need to be resolved, we reverse and remand to the district court for further proceedings.
 
 I.
 
 2
 Plaintiff, James Tol, is employed by defendant ABF Freight Systems, Inc. ("ABF").[1] At all times relevant to this case, plaintiff has been a member of defendant, General Teamsters Union, Local 406 ("Local 406" or "Union"), and covered by several collective bargaining agreements executed by the defendants.
 
 
 3
 In the Fall of 1979, ABF decided to transfer the hub of one of its long distance hauling operations from Grand Rapids, Michigan to Neelyville, Missouri. Before doing so, however, the collective bargaining agreement required ABF to obtain the approval of the Change of Operations Committee ("Change Committee"), a committee made up of management and union repesentatives. At the hearing held by this committee, representatives of Local 406 and ABF stated that they would not object to the change of operations as long as ABF agreed that there was a single "master seniority list" covering both local and long distance drivers. The company agreed to this, and the committee eventually approved the change of operations.
 
 
 4
 Plaintiff was not present at this meeting and was apparently not aware that the union's representative had made the statement regarding the master seniority list. He was also apparently not aware that the Change Committee had accepted the notion of a single seniority list in approving the change in operations. Such a notion was contrary to plaintiff's understanding that two separate seniority lists were in effect; one for long distance drivers and the other for local drivers. Plaintiff was a local driver. Under a two-list system, when there is a change in operations resulting in a transfer of a long distance hub to another hub facility, the long distance drivers are required to follow their work to that new location. The collective bargaining agreement allows the transferred drivers to exercise their seniority even as to local drivers at the new hub facility, but they are not supposed to use their long-distance seniority to displace the local drivers working out of the old facility.
 
 
 5
 Nevertheless, because of the representations made by Local 406 and ABF concerning seniority and the Change Committee's subsequent approval of the change of operations (including the change in seniority policy), a long distance driver, Michael Krese, was able to exercise seniority over plaintiff and bump him out of the Grand Rapids terminal. Plaintiff was given a choice of being laid off or transferred to Neelyville, Missouri, the new long-distance hub, as a road driver. Plaintiff chose the layoff, but did not go down without a fight.
 
 
 6
 Prior to being laid off in February, 1980, plaintiff filed several timely grievances challenging the consolidation of the two seniority lists and ABF's attempts to either lay him off or transfer him to another facility. Plaintiff claims that he did not know at this time why the lists had been consolidated into one seniority list so as to enable a long distance driver to bump a city driver, but he did know that the list had indeed been consolidated because that would have been the only way Krese--a long distance driver--could have bumped him. Plaintiff's grievances were rejected at the local level and were appealed, as of right, to the Central States Joint Area Committee ("CSJAC"), the third step in the grievance process. CSJAC is composed of representatives from the employers and the union, and is empowered, by a majority vote, to issue final and binding decisions on disputes brought before it. See J.App. at 94.
 
 
 7
 Plaintiff was represented before CSJAC by one of the union's business agents, Donnis Dieters. Mr. Dieters had also been the representative at the proceedings before the Change Committee. It is unclear from the record when CSJAC considered plaintiff's grievance. However, the grievance was denied sometime in early 1980. Plaintiff, who had chosen not to attend the proceedings, was informed of the denial by Mr. Dieters. Dieters also informed plaintiff at this time that the Union had done all that it could for him and would not pursue his grievance any further. Plaintiff accepted the Union's decision and decided not to challenge it in court. According to plaintiff, he did not challenge the decision because he was "led to believe" that Mr. Dieters had argued before CSJAC that Local 406 had two seniority lists, i.e., one for local drivers and one for long distance drivers. Thereafter, on February 2, 1980, plaintiff's layoff began.
 
 
 8
 About three and a half years passed. Then, in August of 1984, plaintiff was recalled from layoff. Also around this time plaintiff claims he learned the "real reason" why his grievance had been denied. According to plaintiff, Local 406 officers wanted to reward Mr. Krese for his active involvement in Union political campaigns, and, as such, these officers ordered Union representatives to argue before the Change Committee that there was a single master seniority list since such a seniority arrangement would be beneficial to Krese. According to plaintiff, it was pursuant to these orders that Dieters told the Change Committee that the Union had a master seniority list. Moreover, plaintiff claims that Dieters made this same "misrepresentation" before the CSJAC during the hearing on plaintiff's grievance, and then misled plaintiff into believing that he (Dieters) had told the CSJAC that the Union had two seniority lists.
 
 
 9
 Upon learning of these "facts" for the first time in August 1984, plaintiff contacted Union officials in an attempt to have the wrong rectified. Informal discussions were fruitless, and, on December 7, 1984, plaintiff filed a new grievance requesting a rehearing of his 1980 grievance. Plaintiff filed this new grievance because he believed that the 1979 and 1982 collective bargaining agreement gave him a right to do so. Local 406 officials denied plaintiff's grievance and it was referred to CSJAC. Plaintiff states in his affidavit that at all times the union led him to believe he was following proper procedures in pursuing the rehearing of his 1980 grievance. On May 1, 1985, CSJAC heard plaintiff's grievance and denied it as "improper." J.App. at 189.
 
 
 10
 On October 31, 1985, just one day shy of six months after the grievance had been denied, plaintiff filed this lawsuit in United States District Court for the Western District of Michigan. His complaint raised a hybrid section 301 claim, alleging a breach of the duty of fair representation by Local 406, and a breach of the collective bargaining agreement by ABF. Plaintiff believes that this breach of duty is evidenced by the Union's failure to prosecute in good faith his 1980 grievance, and, further, by the Union's attempt to fraudulently conceal the real reason for failing to prosecute the grievance properly. He also claims that the Union acted in bad faith by knowingly concealing that there are separate seniority lists.
 
 
 11
 Defendants filed motions to dismiss and for summary judgment arguing that plaintiff's claim was barred by the six-month statute of limitations established for hybrid section 301/unfair representation cases in Del Costello v. Int'l Brotherhood of Teamsters, 462 U.S. 151 (1983). The district court conducted a hearing on these motions on November 24, 1986. On that date Judge Enslen rendered an oral opinion granting the motions finding that plaintiff's complaint was indeed untimely. Eventually the court issued a written opinion, explaining more completely the reasons for its decision. J.App. at 201. Plaintiff filed a timely appeal.
 
 II.
 
 12
 Whether plaintiff's claim is barred by the statute of limitations depends upon when the claim accrued and when the statute began to run. The general rule is that a section 301 cause of action accrues at the time an employee knew or should have known of the acts constituting the alleged violation. Sevako v. Anchor Motor Freight Inc., 792 F.2d 570, 574 (6th Cir.1986); Dowty v. Pioneer Rural Electric Coop., 770 F.2d 52, 56 (6th Cir.1984), cert. denied, 106 S.Ct. 572 (1985). In this case plaintiff acknowledges, as he must, that his section 301 claim arises from events that occurred in 1979-80. At that time he knew that his grievance had been denied by CSJAC and that the Union was not going to process the matter any further. Under normal circumstances, then, his claim would have accrued at that time and would have long since been barred by the statute of limitations. Recognizing this fact, plaintiff made a two-part argument before the district court, and renews that argument here, that the statute was tolled until May 1985. Specifically, plaintiff claims that the six-month statute of limitation was tolled from 1980 until August 1984 by his collective bargaining representative's fraudulent concealment of the facts constituting his claim and then from August 1984 until May 1985 by bad faith acts on the part of the Union which lulled him into trying to have his grievance "reheard" instead of seeking timely redress in the courts.
 
 
 13
 The court below did not pass on the first prong of plaintiff's tolling theory--i.e. the fraudulent concealment claim. In the district court's view, there was no need to resolve that claim because even if fraudulent concealment did exist--and the court found that to be a "close question"--the concealment ended and the statute started to run again in 1984 when plaintiff learned of the "real" reason for the denial of his grievance. Therefore, the district court reasoned, unless plaintiff could establish that the statute should be tolled beyond 1984, his section 301 suit, filed as it was on October 31, 1985, would still be barred by the statute of limitations.
 
 
 14
 The court then proceeded to address, and reject, the second prong of plaintiff's "tolling theory," i.e., that the statute was tolled from August 1984 until May 1, 1985 by the bad faith acts of the union in lulling plaintiff into trying to have his 1980 grievance reheard. The court first observed that because plaintiff's 1984 grievance was merely a request that the CSJAC reconsider his 1980 grievance, it was subject to the general rule that a request to reconsider a grievance does not toll the statute of limitations absent a specific contractual provision, not present here, allowing the employee to request reconsideration of the decision. See Hull v. Local 414, Int'l Brotherhood of Teamsters, 601 F.Supp. 869, 872-73 (N.D.Ind.1985); Beckett v. Anchor Motor Freight, 113 L.R.R.M. 2608, 2612 (N.D.Ohio 1982). To support this proposition the court quoted from an unpublished decision of this court, where it was stated that a contrary rule "would place the statute of limitations entirely in the hands of the plaintiff and nullify the effect of a standard statute of limitations for all hybrid Sec. 301/unfair representation cases." Gersbacher v. Commercial Carriers, Inc., No. 84-1014, slip op. at 4 (6th Cir. June 17, 1985). The court then addressed plaintiff's argument that this "general rule" should not apply to him because he had reasonably believed that filing the grievance was the proper step to take once he learned about the fraud. More specifically, plaintiff argued that the Union, by approving the filing of the grievance and processing it through the system without noting any objection, had led plaintiff to believe he was following the proper procedures and thereby had "lulled" him into not filing his section 301 suit in a timely manner. Again relying on Gersbacher, the court rejected this argument.
 
 
 15
 As a consequence of not deciding plaintiff's fraudulent concealment claim, the district court assumed that the statute of limitations was tolled and that plaintiff's claim did not arise until sometime in 1984. Accordingly, for purposes of this appeal we must also assume that the claim did not arise until 1984, although, like the district court, we express no opinion as to the merits of plaintiff's fraudulent concealment argument. Turning then to the second part of plaintiff's tolling theory, we believe that, on this record, the district court erred in dismissing plaintiff's complaint. In our view, the court should have conducted further proceedings to resolve various factual disputes which bear on the issues of whether the Union had treated plaintiff's 1984 grievance as proper and if so whether the Union's conduct amounted to "lulling" the plaintiff into foregoing the filing of his lawsuit so that his grievance could be heard.
 
 
 16
 Our disposition is based upon our view of the posture of this case. Specifically, we see this case as an appeal from a grant of summary judgment. That is, in addition to the pleadings, the record before the district court included a two-page affidavit filed by plaintiff in which he made several assertions to butress his claim that the Union treated his 1984 grievance as properly brought. J.App. at 179. Our review of Judge Enslen's opinion leads us to believe that he did not exclude this affidavit in passing upon defendants' motion to dismiss and, as such, the 12(b)(6) motion was converted into one for summary judgment. See Fed.R.Civ.P. 12(b).
 
 
 17
 Accordingly, viewing the pleadings and affidavit in the light most favorable to the plaintiff, we conclude that summary judgment on this record was not appropriate. While we recognize that plaintiff did characterize his grievance as a "request for reconsideration," plaintiff's pleadings and affidavit, favorably viewed, suggest that the Union, by accepting plaintiff's 1984 grievance and processing it through the system, considered the grievance, at least initially, as a "new" grievance that had been properly brought. This would certainly not be surprising in light of the fact that plaintiff's "request for reconsideration" was filed four years after the first grievance and was based upon evidence which gave the earlier grievance an entirely new slant. Moreover, even if the Union handled the so-called "request for reconsideration" as it would any other such request, the Union's action in processing the grievance through several stages of the grievance machinery may well have had the "lulling" effect about which plaintiff complains. In either case, plaintiff would have a persuasive argument, at least in these unique circumstances, that the statute of limitations was tolled beyond 1984.
 
 
 18
 We recognize such a result may appear to conflict with cases like Gersbacher, Hull, and Beckett, which stand for the proposition that a request to reconsider a grievance does not toll the statute of limitations where such request is not authorized by the collective bargaining agreement. While we do not dispute the validity of those cases, we believe they can be distinguished. In the first place, as mentioned, we are not convinced that plaintiff's grievance--while termed a "request for reconsideration"--was actually viewed as such by the Union. Further proceedings will be needed to resolve this particular issue. Second, even if the 1984 grievance was treated as a reconsideration of the prior grievance, as opposed to an entirely new grievance, we are not convinced that Gersbacher and the other cases would apply in the peculiar circumstances presented here. In none of those cases was there any contention that the Union had fraudulently concealed the plaintiff's respective claims. In this case the district court has assumed not only that such concealment existed but that it continued for over four years. Consequently, on remand the court should also consider whether plaintiff's grievance--because it is based upon a matter that had been concealed--should be distinguished, for purposes of tolling the statute of limitations, from the grievances that were in issue in Gersbacher, Beckett, and Hull.
 
 
 19
 For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Tol had originally been employed by East Texas Motor Freight Lines, Inc. ("ETMF"), which was taken over by ABF in 1982. For ease of discussion, the employer will be referred to as ABF, even though during some of the events in this case ETMF was actually the employer