**A.E. ALCORN; Z.H. Lewellen; R.E. Carlson; R.V. Yates; T.W. Neihart; L.J. Meehan; L.C. Yates; J.R. Thorstenson; B. Galbreck; R.R. Hemley; R. Koch; and M. Anderson, Appellants,**

v.

**The BURLINGTON NORTHERN RAILROAD COMPANY, a Corporation; and the International Brotherhood of Locomotive Engineers, a Labor Union, Appellees.**

**No. 88–2412NE.**

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1989.

Decided July 10, 1989.

---

1. The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

Louis Thrasher, Lincoln, Neb., for appellants.

Harold A. Ross, Cleveland, Ohio and Thomas J. Knapp, Fort Worth, Tex., for appellees.

Before JOHN R. GIBSON, Circuit Judge, MARKEY,* Chief Judge, and HENLEY, Senior Circuit Judge.

* The Honorable HOWARD T. MARKEY, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

MARKEY, Chief Judge.

A.E. Alcorn, Z.H. Lewellen, R.E. Carlson, R.V. Yates, T.W. Neihart, L.J. Meehan, L.C. Yates, J.R. Thorstenson, B. Galbreck, R.R. Hemley, R. Koch, and M. Anderson (collectively appellants) appeal from the district court's[1] dismissal of their complaint. We affirm.

## I. BACKGROUND

In the late 1970's, two major midwestern railroads, the Chicago, Rock Island and Pacific Railroad (Rock Island) and the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee), declared bankruptcy. On March 4, 1980, several railroads and unions, including the Burlington Northern Railroad Company (Burlington) and the International Brotherhood of Locomotive Engineers (IBLE), negotiated an agreement (March 4th Agreement) to ease reorganization of the bankrupts. *See Beardsly v. Chicago & N.W. Transp. Co.,* 850 F.2d 1255, 1258–59 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1341, 103 L.Ed.2d 810 (1989). The purpose of the March 4th Agreement was to provide: "a fair, equitable and complete arrangement for protection of Milwaukee and Rock Island employees taken into the employ of interim service operators and purchasing carriers ... and to enable the interim service operator or purchasing carrier to be operated in the most efficient manner...." The March 4th Agreement provided for hiring of former Milwaukee employees in order of seniority, for negotiation of "implementing" agreements allocating seniority between those persons and the acquiring carrier's incumbent employees, and for arbitration if an implementing agreement could not be reached.

In April 1982, Burlington acquired rights to operate a route through South Dakota formerly operated by Milwaukee. On October 22, 1982, Burlington and IBLE signed an implementing agreement allowing former Milwaukee engineers to use, for a

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

period of six-years, their Milwaukee-accumulated seniority in securing and holding positions at Burlington. That agreement provided that after July 1, 1988, their seniority would be measured from the date of employment with Burlington.

The appellants are former Milwaukee employees and members of IBLE hired by Burlington between 1982 and 1984. On June 24, 1988, appellants filed a complaint and moved for a temporary restraining order (TRO) against measurement of seniority from the date of employment with Burlington. Appellants claimed that: (1) their interests were not fairly protected by Burlington and IBLE during the implementing agreement negotiations; and (2) their complaints to IBLE regarding the seniority provision were not fairly pursued through a grievance/arbitration procedure. Under *Beardsly*, say appellants, they are entitled now to arbitration, even if their claim of unfair representation is barred.

The district court dismissed the claims and denied the motion for TRO, accompanying its orders with a memorandum opinion in which it applied the six-month statute of limitations, 29 U.S.C. § 160(b), borrowed and applied in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), to bar both claims, having found that they had accrued long before the filing of the suit.

Regarding the claim of unfair representation, the court said:

> Several witnesses testified that the plaintiffs knew of the difference between their understanding of what the October 22nd agreement said and what it in truth said by late 1982, or at the latest in 1983. Certainly their claims based upon a theory of unfair representation at the negotiations for the October 22nd agreement accrued as of sometime in 1983. Because more than six months has past since 1983, I must find that the limitations period on that claim has run. Thus, this court has no jurisdiction to consider the merits of that claim.

Regarding the claim to arbitration, the court distinguished *Beardsly* saying:

> I do not feel compelled to follow the analysis and holding of *Beardsley* (sic, *Beardsly*) for several reasons. First, it seems likely, though the opinion is not entirely clear on this point, that the *Beardsley* engineers never sought arbitration and that, in fact, they may have been unaware of their right to seek arbitration under the March 4th agreement. *See Beardsley* [, 850 F.2d at 1260–61]. The *Beardsley* engineers' claims seem not to have been based upon the defendants' failure to pursue their grievances or to submit the engineers complaints to arbitration. The *Beardsley* engineers' substantive claims, over which the court found that it had no jurisdiction, did not concern the arbitration issue. Accordingly, the Eighth Circuit apparently had no reason to reach the issue of whether such a claim would be barred under *Del Costello* (sic, *DelCostello*). Rather, the court seemingly found that since no attempt to take matters to arbitration had been made by the plaintiffs, their right to initiate such action still existed subject to a defense of laches.

> Unlike the *Beardsley* engineers, the plaintiffs' claim about the union's refusal to pursue their grievances clearly states a claim such as was envisioned by the *Del Costello* Court. The *Del Costello* Court acknowledged that claims of unfair representation could arise in situations in which the union refused to pursue its members' grievances to arbitration or in which the union refused to pursue its members' complaints through the preliminary stages of a grievance procedure. [462 U.S. at 166–67, n. 16, 103 S.Ct. at 2291–92, n. 16]. Because I find that the plaintiffs knew that their union representatives would not pursue their grievances after 1984, and because there is no evidence that the plaintiffs continued their efforts to pursue their grievances at any time after 1984 until they filed this lawsuit, I find that the six-month statute of limitations on this claim has run and the (sic) this court lacks jurisdiction to consider their claims based on the defendant's failure to arbitrate or to order the parties to arbitration.

## II. ISSUES

### A. Unfair Representation Claim

 The district court correctly held that the six-month limitations period applied in *DelCostello* barred appellants' unfair representation claim. *See Beardsly*, 850 F.2d at 1265.

The district court correctly found that appellants' unfair representation claim accrued upon their discovery, in 1983, that they did not have lifetime seniority under the implementing agreement. Appellants challenge that finding, citing an indication in an earlier opinion in the *Beardsly* case that this court was concerned not with plaintiffs' awareness but with unfair representation. The argument is unavailing because that earlier opinion was vacated and revised, the language on which appellants rely being removed. *Beardsly v. Chicago & N.W. Transp. Co.*, 836 F.2d 1493, *vacated*, 850 F.2d 1255 (8th Cir.1988).

### B. Claim to Arbitration

 The district court correctly held the six-month limitation applicable to appellants' claim to arbitration and correctly distinguished *Beardsly* in relation to that claim.

The evidence indicating that appellants were aware of their right to arbitrate was not the sole basis for the district court's finding that their claim to arbitration had accrued more than six-months before they filed their complaint in court. The district court found that that claim accrued when appellants became aware in 1984 that the IBLE would not thereafter pursue their complaint through a grievance or arbitration procedure. That conclusion is a correct statement of law as applied here, where, unlike the circumstances in *Beardsly*, appellants were confronted with an express refusal of IBLE to act on their demands.

 A limitations period accrues when a claimant knows, or should know through an exercise of reasonable diligence, of the acts constituting the alleged violation. *See Dowty v. Pioneer Rural Elec. Coop.*, 770 F.2d 52, 56 (6th Cir.), *cert. denied*, 474 U.S.

1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985); *Howard v. Lockheed–Georgia Co.*, 742 F.2d 612, 614 (11th Cir.1984); *Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Appellants' knowledge of the IBLE's refusal to pursue their complaints in 1984 constitutes knowledge of the the alleged violation of the duty to initiate a grievance/arbitration procedure, and that knowledge triggered the beginning of the limitations period. *See Lincoln v. District 9, Int'l Ass'n of Machinists*, 723 F.2d 627, 630 (8th Cir. 1983); *Askew v. F & W Express, Inc.*, 723 F.2d 624, 625 (8th Cir.1983), *cert. denied*, 469 U.S. 916, 105 S.Ct. 292, 83 L.Ed.2d 228 (1984); *Stahlman v. Kroeger Co.*, 723 F.2d 621, 622 (8th Cir.1983). Appellants' claim to arbitration had therefore long been barred when it was filed.

In sum, the district court's dismissal of appellants' claims against IBLE and Burlington was proper because those claims are barred, having accrued more than six-months before suit was brought. *See Lincoln*, 723 F.2d at 630; *Guy v. Swift & Co.*, 612 F.2d 383, 385 (8th Cir.1980) (where limitation period has expired, dismissal for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., is proper).