928 F.2d 1132
 138 L.R.R.M. (BNA) 2048
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dan CIRINO, Robert Cox, Plaintiffs-Appellants,
v.
VME AMERICAS, INC., Successor in interest to Euclid, Inc.,
International Union, United Automobile Aerospace &
Agricultural Implement Workers of
America, Local 426,
Defendants-Appellees.
 No. 90-3489.
 United States Court of Appeals, Sixth Circuit.
 March 28, 1991.
 
 On Appeal from the United States District Court for the Northern District of Ohio, No. 86-04845; Lauibros, J.
 N.D.Ohio
 AFFIRMED.
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs Dan Cirino and Robert Cox brought suit under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, against their former employer, Euclid, Inc. (now known as VME Americas, Inc.) for wrongful discharge in breach of the collective bargaining agreement and against the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 426, for breach of its duty of fair representation. The district court granted summary judgment to both VME and the Union, finding that the plaintiffs failed to exhaust the grievance procedures established under the collective bargaining agreement. For the following reasons, we affirm.
 
 
 2
 In March, 1986, VME re-hired Cirino and Cox as general maintenance personnel. Both had previously been employed by VME for approximately ten years, but each was permanently laid off due to a plant closing in 1984. Because of the plant closing, plaintiffs received severance benefits which terminated their seniority rights. Consequently, both Cirino and Cox were considered "new hires" when they resumed employment with VME on March 3, 1986.
 
 
 3
 During this period of reemployment, plaintiffs were covered by a 1983-1986 collective-bargaining agreement that remained in effect to govern the remaining hourly employees who did maintenance work in the plant. Provisions 52-53 governed seniority rights under the agreement:
 
 
 4
 (52) Employees shall be regarded as temporary employees until their names have been placed on the seniority list. There shall be no responsibility for the reemployment of temporary employees if they are laid-off or discharged during this period. However, any claim by a temporary employee made after 30 days of employment that his layoff or discharge is not for just cause may be taken up as a grievance.
 
 
 5
 (53) Employees may acquire seniority by working ninety days during a period of six continuous months in which event the employee's seniority will date back ninety days from the date seniority is acquired.
 
 
 6
 Both plaintiffs indicated through deposition testimony that they realized there was uncertainty surrounding their future employment with VME. Cirino characterized his employment with VME as a "calculated gamble." Cox testified that he was not provided with any specific indication as to the duration of his recall. He also indicated that the personnel secretary who contacted him for recall told him "she didn't know how long it was going to last."
 
 
 7
 On May 21, 1986, plaintiffs were notified that they would be laid off, effective May 23, 1986, just three days before they were to become seniority employees under the collective-bargaining agreement. Three other employees who were recalled at the same time as Cirino and Cox were also laid-off. Both Cirino and Cox questioned their foreman, Tom Peters about their layoffs. Cirino indicated through his affidavit that he was told by Peters, "[w]e're not getting anywhere with the Union. We have to lay you [including Cox and the three other maintenance employees] off until we get these matters resolved." Cox testified through his affidavit that Peters advised him not to "worry about your job. We will have you come back to work with Euclid [VME] as soon as we can get the contract signed."
 
 
 8
 Cirino and Cox spoke to Union committeeman Danny Goins about filing a grievance protesting their layoffs. Goins told plaintiffs that "I don't know what we can file under because I don't know what the paragraph [of the collective-bargaining agreement] would cover." He informed plaintiffs that he would look into the possibility of filing a grievance and get back to them. Goins read the union contract book and called Horace Browner of the International Union of the UAW and asked if he thought they had a grievance under the collective-bargaining agreement. He responded that he did not.
 
 
 9
 The grievance procedure established under the collective-bargaining agreement requires an employee having a grievance first to take the grievance up with his foreman, who will attempt to adjust it. The next step directs the employee to request the foreman to call the committeeman for that district to handle the specified grievance with the foreman. The foreman is required to contact the committeeman and together they attempt to adjust the grievance. If the grievance is not adjusted by the foreman, it is reduced to writing and signed by the employee involved. The committeeman is then permitted to take the grievance up with higher supervision. If the grievance remains unadjusted, it is referred to the Shop Committee.
 
 
 10
 The district court granted summary judgement to VME and the Union, finding that plaintiffs' suit was barred because plaintiffs failed to exhaust their intra-union remedies. The district court also found that the union did not breach its duty of fair representation because "a meritorious grievance did not exist," because plaintiffs were laid-off before their seniority rights had vested.
 
 
 11
 Plaintiffs raise two arguments on appeal. First, plaintiffs argue that they introduced sufficient evidence to establish a prima facie case under Sec. 301 for breach of the union's duty of fair representation and VME's breach of the collective-bargaining agreement. Second, plaintiffs argue that their failure to exhaust the Union's grievance procedures was justified because doing so would have been futile. We will first address plaintiffs' second argument as it must be resolved in plaintiffs' favor in order for us to reach plaintiffs' first argument.
 
 
 12
 To prevail in an action under Sec. 301 against either the employer or the union, an employee must ordinarily establish both that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-571 (1976). "An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under Sec. 301 of the Labor Management Act." Clayton v. International Union, UAW, 451 U.S. 679 (1981) (citations omitted). An inexcusable failure to exhaust the internal union appeals procedures bars suit against both the union and the employer. Wagner v. General Dynamics, 905 F.2d 126, 127 (6th Cir.1990); Monroe v. International Union, UAW, 723 F.2d 22, 24 (6th Cir.1983). One recognized exception to the general rule of exhaustion of remedies exists when it is "futile" for the employee to pursue the appeal procedures because it is demonstrated that such procedures are biased against the employee. Clayton, 451 U.S. at 689; Farmer v. ARA Services, Inc., 660 F.2d 1096 (6th Cir.1981).
 
 
 13
 The district court dismissed plaintiffs' suit because it found that plaintiffs never initiated the first step of the Union's grievance procedure, namely taking the grievance up with their foreman. The district court assumed that an individual by the name of Thomas Key was plaintiffs' foreman, apparently based upon the deposition testimony of union committeeman Danny Goins. The record indicates, however, that Tom Peters was plaintiffs' foreman. Plaintiffs argue that they complied with the first step of the grievance procedure by discussing their layoff with Peters. During his deposition, Cirino was asked, "When was the first time, if ever, you complained to anyone in management about your layoff?" Cirino responded, "We never complained per se. We asked why, of Mr. Peters, the day he gave it [the layoff notice] to us." Later in the deposition Cirino was again asked, "Did you complain to him [Peters] about the layoff?" Cirino answered, "If the complaint is 'Why are we being laid off,' yes." Cirino admitted, however, that he never informed Peters that he was attempting to invoke the grievance procedure.
 
 
 14
 Plaintiffs' inquiry as to the reason for their layoffs with Tom Peters does not satisfy the first requirement of the grievance procedure. Under the collective-bargaining agreement, an employee seeking adjustment of a grievance must first attempt to adjust that grievance with his foreman. Although it is unlikely that Peters would have been able to adjust plaintiffs' grievance to their satisfaction, this does not relieve their obligation to do so. It is only after the employee speaks with his foreman that the union committeeman becomes involved. Indeed, it is the foreman, and not the employee, who contacts the union committeeman concerning the grievance. Plaintiffs do not allege any wrongdoing on the part of Peters in not contacting the union committeeman, presumably because plaintiffs never requested him to do so. Goins testified that "[t]hey [referring to Cirino and Cox] have to start the procedure.... Call a foreman and have him call me in an official capacity." Goins testified that he never filed a grievance on behalf of Cirino and Cox because "[t]hey never pursued the grievance."
 
 
 15
 Plaintiffs argue that their failure to exhaust the union's grievance procedures is excusable because of the "total uncooperativeness" exhibited by Goins and Horace Browner, VME's international union representative. On the day in which plaintiffs were informed of their impending layoffs, plaintiffs indicated to Goins that they wanted to file a grievance because they felt that they were being laid off unjustly. Goins told the plaintiffs that he did not know what they could file under because they were not seniority employees. Goins discussed the matter with Browner who also did not think that Cirino and Cox had a viable grievance. Browner told Goins to "[c]heck into it and find out what their problem is. And from what you are telling me I don't think they got a problem but if they insist on having a grievance, write the grievance."
 
 
 16
 Both Goins and Browner both did not think that plaintiffs had any basis for filing a grievance; this alone, however, does not establish that it would have been "futile" for plaintiffs to pursue their grievance. In Miller v. General Motors Corp., 675 F.2d 146 (7th Cir.1982), cited with approval in Monroe v. International Union, UAW, 723 F.2d 22, 26 (6th Cir.1983), the Seventh Circuit held that an employee was required to pursue his appellate rights even when told at the local level that the appeal would fail. Id. Plaintiffs have not established that either Goins or Browner would have failed to pursue plaintiffs' grievance if one had been filed. Indeed, the statements of both men seem to indicate that each would have pursued the grievance even though they thought it to be meritless. "The courts have generally insisted upon a 'clear and positive showing of futility' before excusing a failure to exhaust...." Miller v. Chrysler Corp., 748 F.2d 323, 326 (6th Cir.1984) (quoting Winter v. International Brotherhood of Teamsters, Local 639, 569 F.2d 146, 149 (D.C.Cir.1977)). Plaintiffs have failed to make this showing; thus, plaintiffs cannot maintain their suit under Sec. 301 against either VME or the Union.
 
 
 17
 Because we find that plaintiffs' suit is barred due to a failure to exhaust intra-union remedies, we find it unnecessary to address plaintiffs' first argument as doing so would be duplicative.
 
 
 18
 Accordingly, the judgment of the district court is affirmed.