935 F.2d 270
 138 L.R.R.M. (BNA) 2048
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Thomas James KILBANE, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY and the International Union, United
Automobile, Aerospace and Agricultural Workers of
America, Local No. 1250, Defendants-Appellees,
 
 No. 90-3922.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1991.
 Before ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff appeals the district court's order granting summary judgment in favor of defendant Ford Motor Company and dismissing his action under the Labor Management Relations Act Sec. 301, 29 U.S.C. Sec. 185, on the grounds that his claim is barred by the statute of limitations. For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiff Thomas James Kilbane ("Kilbane") was formerly employed by Ford Motor Company ("Ford") at its Cleveland Engine Plant[1] until September 12, 1977, when Ford terminated his employment. Plaintiff's Union[1] filed a grievance on Kilbane's behalf that same day. The collective bargaining agreement provided for a four-step grievance process, culminating in binding arbitration. Ford denied the grievance in the second step of the process on November 11, 1977. After appealing to the third-step, the Union withdrew Kilbane's grievance on July 25, 1980, without notifying Kilbane. Kilbane claims he contacted the Union on a regular basis from 1977 through 1983, and that on each occasion Union officials assured him that his grievance would be processed through the fourth step, if necessary.
 
 
 3
 While his grievance was pending, plaintiff received health insurance under Ford's Blue Cross Group Health Insurance policy. During this period, from September 1, 1977 through January 31, 1983, Kilbane's wife wrote monthly letters to Ford, enclosing payment for health insurance coverage and informing the company of the pending grievance.
 
 
 4
 In a letter dated December 13, 1983,[2] a Ford labor relations representative wrote to the Accounts Payable Department of the Cleveland Engine Plant 1 informing that Kilbane's grievance was "settled and closed" and that Kilbane was no longer eligible for health insurance coverage. A copy of the letter was sent to Kilbane, but Kilbane does not recall having seen it until January 25, 1983. On that date, he received a handwritten letter from Ford dated January 21, 1983 enclosing a copy of the December 13 letter from labor relations, and stating that Kilbane's health insurance coverage would expire in January 1983.
 
 
 5
 Kilbane maintains that in the four to six weeks following his receipt of the Ford letter on January 25, 1983, he made several trips to the Union headquarters in an effort to discuss the status of his case, but that officials were always "too busy" to talk, or were unable to locate his file. Kilbane claims that it was only when he pulled his own file in the Union office, in late February or early March, 1983, that he learned that the Union had decided not to advance his grievance to the arbitration stage.
 
 
 6
 Kilbane filed suit in state court on July 29, 1983, alleging a breach of the duty of fair representation by the Union and a breach of the collective bargaining agreement by Ford, in violation of the National Labor Relations Act Sec. 301, 29 U.S.C. Sec. 185. Following removal to federal court, Ford filed a motion for summary judgment on the ground that the claim was barred by the statute of limitations. On September 14, 1990, the district court granted Ford's motion.
 
 II.
 
 7
 Kilbane's section 301 claim is governed by the six-month statute of limitations borrowed from section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b). Del Costello v. Int'l Brotherhood of Teamsters, 462 U.S. 151 (1983); Fox v. Parker Hannifin Corp., 914 F.2d 795, 803 (6th Cir.1990); McCreedy v. Local Union No. 971, UAW, 809 F.2d 1232, 1236 (6th Cir.1987). The only issue presented for our resolution, therefore, is whether Kilbane's cause of action accrued on January 25, 1983, at the time he received the January 21, 1983 letter from Ford, or whether the cause of action did not accrue until late February or early March, 1983, when Kilbane pulled his file and learned that the Union had decided not to pursue his grievance to the arbitration stage. Under the first instance, plaintiff's cause of action would be time barred under the six month statute of limitations.
 
 
 8
 A claim accrues under section 10(b) "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Shapiro v. Cook United, Inc., 762 F.2d 49, 51 (6th Cir.1985) (per curiam); Fox, 914 F.2d at 803. In a "hybrid" section 301 suit brought against both the Union and the Company, the cause of action accrues against the Company at the same time that it accrues against the Union. See Fox, 914 F.2d at 803.
 
 
 9
 We agree with the district court that Kilbane's cause of action accrued when he received Ford's January 25, 1983 letter informing him that the grievance was "settled and closed." The case law is clear that a cause of action may accrue before formal notice of a decision on a grievance is received. See, e.g., Dowty v. Pioneer Rural Elec. Coop, Inc., 770 F.2d 52, 57 (6th Cir.), cert. denied, 474 U.S. 1021 (1985) (failure to receive a copy of arbitration decision pertaining to plaintiff's grievance did not toll the statute of limitations because plaintiff knew before that time "what the union [had] done to represent his interests and essentially the disposition of his grievance"); Bruch v. United Steelworkers of America, 583 F.Supp. 668 (E.D.Pa.1984) (applying same analysis for failure to bring a grievance to arbitration).
 
 
 10
 In this case, Kilbane should reasonably have known upon receipt of the January 25, 1983[3] letter from Ford that a breach of the duty of fair representation had occurred. Since the letter made him aware that his grievance was settled and closed, Kilbane's activities in periodically visiting the Union hall during the subsequent four to six week period can only be viewed as an attempt to either confirm the validity of the letter, or to take a de facto appeal of the decision. The statute of limitations runs from the time that the plaintiff first learns of the facts giving rise to the complaint, not from the time at which the plaintiff receives formal notice confirming the facts. Dowty, 770 F.2d at 56-57. Furthermore, in the absence of an internal appeal procedure, it should have been clear to Kilbane that an attempt to take a de facto appeal of the decision merely by discussing the letter with union officials would be futile. Legutko v. Local 816, Int'l Brotherhood of Teamsters, 853 F.2d 1046, 1054 (2d Cir.1988) (informal correspondence does not toll the statute of limitations because it does not constitute the pursuit of internal union remedies).
 
 
 11
 Accordingly, the district court's grant of summary judgment in favor of defendants is AFFIRMED.
 
 
 
 [1]
 International Union, United Automobile, Aerospace and Agricultural Workers of America, Local No. 1250
 
 
 [2]
 Ford claims that this December 13 letter was written in 1982 but that, due to a typographical error, it was erroneously dated 1983
 
 
 [3]
 Although the district court's opinion states that Kilbane should have known "[u]pon receipt of the December 13, 1982 letter" from Ford that a breach of the duty of fair representation had occurred, viewing the facts in a light most favorable to plaintiff we will take this to mean the letter as it was enclosed in the January 25, 1983 correspondence